UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MJA HOLDINGS LLC, | ) |
| Plaintiff, | ) C.A. Docket No. 21-cv-10181 |
| v. | ) |
| BATTLE GREEN EQUIPMENT LLC, | ) |
| Defendant. | ) |

## COMPLAINT

MJA Holdings LLC, by its attorneys, Maksim Nemtsev P.C., as and for its Complaint against Defendant Battle Green Equipment LLC, alleges the following:

## THE PARTIES

1. Plaintiff MJA Holdings LLC ("MJA") is a Massachusetts limited liability company formed on April 7, 2022, with its principal place of business located at 25 Bancroft Street, Watertown, MA 02051.

2. Defendant Battle Green Equipment LLC ("Battle Green") is a Delaware limited liability company formed on May 5, 2021, which, upon information, maintains its principal place of business in the City of Denver, State of Colorado, with an address at P.O. Box 11519, 1766 West 46th Avenue, Denver, CO 80211. Additionally, Battle Green established a corporate presence in Massachusetts through a foreign filing dated May 10, 2021, with filing ID Number 202154143200 at the corporations division of the Massachusetts Secretary of State.

## JURISDICTION AND VENUE

3. Jurisdiction of this action lies in the federal district courts pursuant to 28 U.S.C. §1332, as amended, which provides for original jurisdiction in the District Court of all civil

1

actions arising between citizens of different states where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

4. This action is properly brought in the District of Massachusetts pursuant to contractual venue provisions binding the parties, and 28 USC § 1391(b)(2)-(3) in that a substantial part of the events, transactions, and/or omissions giving rise to the claims occurred within the District of Massachusetts and Battle Green is subject to the personal jurisdiction of the District of Massachusetts.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

5. This case involves Battle Green's unfair and deceptive acts made with an intent to induce MJA to purchase certain HVAC equipment from Battle Green for more than $2 Million. Battle Green's unfair and deceptive actions necessitate the recission of the contract and refund of all amounts MJA paid to Battle Green thereunder.

6. On August 18, 2023, MJA and Battle Green entered into an Equipment Purchase and Sale Agreement (the "Contract").[1] Specifically, MJA agreed to purchase twenty (20) Dehumidifying Air Handlers ("HVAC units") at a total sale price of $1,421,243.40 and two (2) Trane Chillers ("Chillers") at a total sale price of $706,366.00 (collectively the "Equipment").[2] The total value of the Contract was $2,127,579.40. MJA anticipated utilizing the Equipment in furtherance of a state-of-the-art grow facility in the District of Massachusetts. MJA paid an initial $212,757.94 deposit on or about August 20, 2023.

7. Under Section 3.7 of the Contract entitled "Equipment Warranties," "[Battle Green] warrants to [MJA] that (a) the Equipment is new and does not contain used or

---

[1] A true and accurate copy of the Contract is attached hereto as **Exhibit A**.
[2] A true and accurate copy of the Equipment List and Specifications, attached to the Contract as Exhibit A, is attached hereto as **Exhibit B**.

2

reconditioned parts, and conforms to the specifications for the Equipment set forth in Exhibit A (the "Specifications"); and (b) warranties for the Equipment are available for purchase directly from the manufacturer of the Equipment." Despite Battle Green's assurances leading up to and stated within the Contract, there was no manufacture warranty available for MJA to purchase for the HVAC units, which were, in addition, not new.

8. Section 7.1 of the Contract, entitled "Conditions to Obligation of the Buyer," provides "[t]he obligation of [MJA] to consummate the transactions to be performed by it in connection with the Closing is subject to satisfaction of the following conditions: (A) the representations and warranties of [Battle Green] set forth in Section 3 shall be true and correct in all material respects at and as of the Closing Date […] [MJA] receives confirmation from qualified personnel, in writing and following the Inspection, that the Equipment conforms to the Specifications and is in good working order…."

9. The Inspection contemplated in Section 7.1(A) of the Contract was to be conducted, in accordance with Section 8.1, "as soon as practicable after the Effective Date but in no case later than Closing," and that "[MJA] shall arrange for the inspection of the Equipment by qualified personnel."

10. Section 2 of the Contract provides that "the purchase and sale of the Equipment contemplated hereby shall take place at a closing to be held at 10 a.m., Boston, Massachusetts time, on September 18, 2023, remotely by exchange of documents and signatures (or their electronic counterparts), or at such other time or on such other date or at such other place as [Battle Green] and [MJA] may mutually agree upon in writing…."

11. Battle Green and MJA, by mutual agreement, extended the September 18, 2023 Closing on three occasions: (1) the parties, on or about September 20, 2023 extended the closing

3

date to October 20, 2023 to facilitate the Inspection of the Equipment. In connection with the extension, MJA wired an additional $212,757.94 deposit to Battle Green on or about September 21, 2023; (2) subsequent to the initial Inspections, described in more detail below, Battle Green and MJA agreed on or about October 17, 2023, to extend the closing date to November 20, 2023 to allow Battle Green the opportunity to remediate non-conforming equipment. In connection with this extension, MJA wired an additional $212,757.94 deposit to Battle Green on or about October 18, 2023; (3) finally, on or about November 15, 2023, the parties agreed to extend the closing date to December 19, 2023 to allow for an inspection of Battle Green's remedial measures. Similarly, in connection with this extension MJA wired Battle Green an additional $212,757.94 deposit to Battle Green on or about November 15, 2023. In total MJA provided $851,031.76 in deposits and additional deposits to Battle Green, which have not been returned.

12. In accordance with Section 8.1 of the Contract, MJA was able to arrange for the inspection of the Equipment by qualified personnel, Brandon Huberty of BMH Mechanical (the "Inspection") on September 23 and September 29. Mr. Huberty's inspection report (the "October report") was received by MJA and provided to Battle Green on October 2, 2023.[3] The October report noted the following concerning the HVAC units (*see* Exhibit C):

- "[the HVAC units] have been wrapped with what appears to be marine shrink wrap."
- "Spot checked multiple [HVAC units] and upon inspection, found that the rigging eyes on the exterior show some rust indicating that units have sat outdoors for some time."
- "Inspected interior and first section I opened had puddled inside with some sort of algae growth."

---

[3] A true and accurate copy of the October report is attached hereto as **Exhibit C**.

4

- "There is visible condensation in unit."
- "There are also insects present."
- "It looks as though the units have sat for some time and possibl[y] through a winter."
- "The New England weather changes with cool nights and hot days have created condensation and there are visible signs of moisture damage."
- "Hardware in the airstream has been rusted over."
- "3 of the units look like they were struck during shipping which given the size of the units, not surprised if a few hit trees during transport."
- "…recommend a full sanitization and clean, replace rusted hardware in air steam, and store indoors in climate-controlled storage until being brought in for installation."

13. In accordance with Section 10.1 of the Contract entitled "Buyer Termination Generally," [MJA] may terminate [the Contract] by giving written notice to [Battle Green] at any time prior to the Closing: (A) in the event [Battle Green] has breached any material representation, warranty, or covenant contained in [the Contract] in any material respect, [MJA] has provided [Battle Green] with written notice of such breach, and [Battle Green] has not cured such stated breach within the five (5) business days of receipt of such written notice; (B) in the event that, following the Inspection, such qualified personnel described in Section 8.1 confirm to [MJA] that a material portion of the Equipment constitutes Non-Conforming Equipment and [Battle Green] does not cure such failures within thirty (30) business days of the Inspection Report Date."

14. Battle Green, therefore, had until November 15, 2023 to cure the failures of the HVAC units set forth within the October report. MJA arranged for the re-inspection of the HVAC units by Mr. Huberty, which was conducted on November 17 and December 5, 2023 with

a written report provided to Battle Green (the "December report") on or about December 5, 2023.[4] While Mr. Huberty "found that the units were cleaned thoroughly and most of the spot rust had been removed/treated with galvanized paint," he continued to note the following nonconforming conditions (*see* Exhibit D):

- "I have some concerns with the integrity of the fan motors."
- "It appears that more than ½ of the motor's bearings are audibly loud and stiff. This is most likely the cause of condensation forming in the motors sealed bearings and rusting."
- "Also, there are some transformers that have an excessive amount of rust."
- "My suggestion is replacement of both fan motors in the 11 units and at least ½ of the transformers on the units that were stored outside. My concern is that all the motors are compromised on the 11 outdoor units."

15. On or about November 30, 2023, the manufacturer of the HVAC units informed MJA there were no manufacturer warranties available to purchase and that the previous warranty expired on June 21, 2023, almost two months before the Contract was entered. Upon information and belief, Battle Green, and more specifically through its employees David W. Ellis and/or Chad Wise, knew that there were no manufacturer warranties available to purchase for the HVAC units prior to entering into the Contract with MJA (and prior to extending the closing date and accepting additional deposits from MJA), and also knew that the HVAC units had been improperly stored outside and exposed to the elements for many months, which caused the significant damage that was discovered by MJA as a result of the October and December reports, prior to being marine wrapped.

---

[4] A true and accurate copy of the December report is attached hereto as **Exhibit D**.

16. MJA wrote to Battle Green on December 12, 2023,[5] pursuant to Section 10.1 of the Contract, demanding that Battle Green (1) cure its breaches of the Contract and misrepresentation concerning the non-existent manufacturer warranties on the HVAC units within five (5) days, and (2) confirm a cure or replacement of the nonconforming Equipment.[6] MJA informed Battle Green that it intended to exercise its remedies on December 20, 2023 by terminating the Contract and demanding the return of the $851,031.76 deposit and all additional deposits made by MJA.

17. On December 26, 2023, after Battle Green failed to respond or cure its breaches of the Contract, MJA informed Battle Green that it was exercising its right to immediately terminate the Contract and demanded that Battle Green return the deposit and additional deposit within ten (10) business days.[7] In addition, MJA provided notice to Battle Green that as a supplier that made specific representations and concealed certain facts and conditions about its products, Battle Green engaged in unfair and deceptive acts under Massachusetts General Laws, Chapter 93A, Section 11 by, inter alia, representing that there were warranties available for purchase from the manufacturer on the HVAC units when there are (and were) not, storing the HVAC units outside such that they degraded and became non-conforming equipment under the Contract, and failing to properly repair and replace the non-conforming equipment.

18. To date, Battle Green has not responded to MJA's demands, and has not returned MJA's deposit or additional deposits.

---

[5] Through its counsel Ryan Holz, Esq. of Greenspoon Marder LLP.
[6] A true and accurate copy of the December 12, 2023 letter is attached hereto as **Exhibit E**.
[7] A true and accurate copy of the December 26, 2023 letter is attached hereto as **Exhibit F**.

# AS AND FOR A FIRST CAUSE OF ACTION
## (Breach of Contract)

19. MJA repeats and realleges each and every allegation set forth above, as though fully set forth at length herein.

20. The Contract is a binding agreement between the parties and MJA has performed all obligations required of it thereunder.

21. Under Section 3.7(A) of the Contract, Battle Green represented to MJA that "the Equipment is new and does not contain used or reconditioned parts, and conforms to the specifications for the Equipment set forth in Exhibit A (the "Specifications")."

22. MJA, in accordance with the Contract terms, arranged for qualified personnel to the inspect the Equipment on September 23 and September 26, which resulted in the October 2, 2023 report (*see* Exhibits C), prior to Closing. As a result of the Inspection, Battle Green was on notice that it had to cure certain defects regarding the aged, damaged, and faulty HVAC units within thirty (30) business days of October 2, 2023.

23. On December 5, 2023, 64 days after the October 2, 2023 report, MJA arranged for a follow-up inspection of the Equipment by qualified personnel that revealed the continued nonconformance of a material portion of the HVAC units (*see* Exhibit D).

24. In addition, under Section 3.7(B) of the Contract, Battle Green represented to MJA that "warranties for the Equipment are available for purchase directly from the manufacturer of the Equipment."

25. After the parties executed the Contract, the manufacturer of the HVAC units informed MJA that there were no manufacturer warranties available to purchase, and that such had been the case for a long time given the age and conditions of the units.

26. Battle Green did not respond to MJA's demand to cure this breach of the Contract within five (5) business days.

27. Finally, included within the Contract, as is the case with every agreement governed by Massachusetts law, is the implied covenant of good faith and fair dealing, which embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

28. Here, the "fruits" of the Contract included MJA's right to receive "new" Equipment and the ability to purchase warranties for the HVAC units from the manufacturer.

29. At the time of the Contract, Battle Green knew that the HVAC units had been stored outside in the harsh Massachusetts weather conditions, making damage to the HVAC units inevitable. Battle Green had even marine/shrink wrapped the units, apparently after speaking with the manufacturer, but before entering the Contract. Also, at the time of the Contract, Battle Green knew or should have known that the manufacturer was not offering warranties on the HVAC units.

30. In sum, Battle Green engaged in bad faith by, *inter alia*, concealing the HVAC units in shrink wrap and leaving them outside in the Massachusetts elements, failing to cure or replace non-conforming equipment while continuing to accept additional deposits from MJA, failing to inform MJA that extended warranties were unavailable prior to entering into the Contract and while continuing to accept additional deposits from MJA, and failing to respond to MJA's multiple breach letters.

31. By reason of the foregoing, Battle Green is liable to MJA for its breach of contract, to which the Contract should be entirely rescinded, and all amounts MJA paid to Battle Green returned.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Massachusetts General Laws, Chapter 93A, Section 11)

32. MJA repeats and realleges each and every allegation set forth above, as though fully set forth at length herein.

33. MJA engages in the conduct of trade or commerce and contracted with Battle Green, an entity that also engages in the conduct of trade or commerce.

34. Battle Green deceived MJA into contracting for the purchase of more than $2 Million of Equipment. Specifically, Battle Green represented to MJA that it could purchase manufacturer warranties on the Equipment, when Battle Green knew there were no manufacturer warranties available for the HVAC units. In addition, Battle Green represented to MJA that the HVAC units were "new" prior to the time of Contract. However, Battle Green knew that the HVAC units were years old, stored outside, and damaged as a result of the harsh Massachusetts weather. Battle Green decided to marine wrap the units at some point, knowing that damage and wear was occurring.

35. Battle Green knew that MJA would not have purchased the Equipment for more than $2 Million had it known that there were no manufacturer warranties available for the HVAC units or that the HVAC units were damaged, rusted, faulty, insect infested, and filthy.

36. Battle Green's unfair and deceptive actions were willful in nature because it knew it had to deceive MJA and conceal facts from MJA in order to make the sale.

37. The actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within Massachusetts.

38. MJA has suffered monetary loss as a result of the employment of the above referenced unfair and deceptive acts by Battle Green.

39. By reason of the foregoing, Battle Green is liable to MJA for treble damages of the amount to be determined at the trial of this action, but which exceeds the jurisdictional threshold of this Court to a significant degree, and the amount of MJA's attorney's fees and costs.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Misrepresentation)

40. MJA repeats and realleges each and every allegation set forth above, as though fully set forth at length herein.

41. Battle Green represented to MJA that it could purchase manufacturer warranties on the Equipment, when Battle Green knew or should have known there were no manufacturer warranties available for the HVAC units.

42. Battle Green represented to MJA that the HVAC units were "new" prior to the time of Contract. However, Battle Green knew or should have known that the HVAC units were years old, stored outside, and damaged as a result of the harsh Massachusetts weather.

43. Battle Green decided to marine wrap the units at some point, knowing that damage and wear was occurring, and concealed that information from MJA prior to entering the Contract.

44. By reason of the foregoing, Battle Green is liable to MJA for inducing MJA to enter into the Contract and to pay substantial deposit amounts based on representations that Battle Green knew or should have known were false. MJA is entitle to rescission of the Contract and return of all deposit payments made plus related costs and fees, or an amount of damages to be determined at the trial of this action, both measures of which exceed the jurisdictional threshold of this Court to a significant degree.

**WHEREFORE,** Plaintiff MJA Holdings LLC demands judgment as follows:

(i)  on its first cause of action, complete recission of the Contract, and return of $851,031.76 in deposits and additional deposits, plus interest, costs, and attorneys' fees;

(ii)  on its second cause of action, treble the amount of damages to be determined at the trial of this action, plus interest, costs, and attorneys' fees;

(iii)  on its third cause of action, complete recission of the Contract, and return of $851,031.76 in deposits and additional deposits, plus interest, costs, and attorneys' fees; and

(iv)  such other and further relief as this Court deems necessary and proper.

Respectfully submitted,

MJA HOLDINGS LLC

By its attorneys,

Dated: Boston, MA
January 24, 2024

MAKSIM NEMTSEV P.C.

By:  */s/ Maksim Nemtsev*
Maksim Nemtsev, Esq.
*Attorneys for Plaintiff*
20 Park Plaza, Suite 1000
Boston, Massachusetts 02116
P: (617) 227-3700
max@mnpc.law

HARTER SECREST & EMERY LLP
*PRO HAC VICE ANTICIPATED*

By:  */s/ Sheldon K. Smith*
Sheldon K. Smith, Esq.
Ryan C. Altieri, Esq.
*Attorneys for Plaintiff*
50 Fountain Plaza, Suite 1000
Buffalo, New York 14202
P: (716) 853-1616
F: (716) 853-1617
ssmith@hselaw.com