# EXHIBIT A

# EQUIPMENT PURCHASE AND SALE AGREEMENT

This Equipment Purchase and Sale Agreement (this "**Agreement**") is made as of this 18th day of August, 2023 (the "**Effective Date**"), by and between Battle Green Equipment LLC, a Delaware limited liability company, whose address is P.O. Box 11519, 1766 West 46th Avenue, Denver, CO 80211-9998 (the "**Seller**"), and MJA Holdings LLC, a Massachusetts limited liability company, whose address is 5 Tannery Drive, Medfield, MA 02052 (the "**Buyer**").

WHEREAS, Seller and Buyer desire to enter into this Agreement to memorialize and to implement the terms and conditions of the sale of the Equipment (as such term is hereinafter defined).

NOW, THEREFORE, in consideration of the premises and the mutual covenants set forth in this Agreement and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

**1. Purchase and Sale of Equipment**. At the Closing (as defined in Section 2) Seller shall sell, transfer, convey, assign, and deliver to Buyer, and Buyer shall purchase, accept, and pay for all right, title, and interest in and to the tangible machinery and equipment set forth on Exhibit A hereto (collectively, the "**Equipment**"), and Buyer shall pay to Seller the aggregate purchase price in an amount equal to Two Million One Hundred Twenty-Seven Thousand Five Hundred Seventy-Nine and 40/100 dollars ($2,127,579.40) (the "**Purchase Price**"). Buyer shall deliver the Purchase Price to Seller by wire transfer in accordance with Seller's written instructions as follows: (x) 10% of the Purchase Price ($212,757.94) shall be paid by Buyer to Seller within two (2) business days of the Effective Date, which amount is refundable to Buyer solely under the circumstances expressly set forth in Section 10.3 herein (the "**Deposit**"), and (y) the remaining 90% of the Purchase Price ($1,914,821.46) shall be delivered by Buyer to Seller on the Closing Date (as such term is defined in Section 2 hereof). Buyer may extend the Closing Date for additional periods of thirty (30) days upon two (2) business days' prior written notice thereof to Seller and no later than two (2) business days prior to the Closing Date or Extended Closing Date, as defined herein, as applicable (each, an "**Extension,**" and each extended Closing Date, an "**Extended Closing Date**"), provided, however, that upon such an Extension, Buyer shall deliver to Seller by wire transfer in accordance with Seller's written instructions an additional 10% of the Purchase Price ($212,757.94) within two (2) business days of the Extended Closing Date (each, an "**Additional Deposit**"). The Deposit and any Additional Deposit will be credited in full towards the Purchase Price at Closing.

**2. Closing**. Subject to the terms and conditions of this Agreement, unless this Agreement shall have been terminated in accordance with Section 10 hereof, the purchase and sale of the Equipment contemplated hereby shall take place at a closing (the "**Closing**") to be held at 10 a.m., Boston, Massachusetts time, on September 18, 2023, remotely by exchange of documents and signatures (or their electronic counterparts), or at such other time or on such other date or at such other place as Seller and Buyer may mutually agree upon in writing subject to all conditions set forth in Section 7 hereof (except those conditions that are to be satisfied or waived at Closing) having been satisfied or waived by the party hereto entitled to the benefit of same (the day on which the Closing takes place being the "**Closing Date**").

DocuSign Envelope ID: AEE7E9C1-C0A4-4CFE-A8B9-7504ECCC1F26

**3. Representations and Warranties of Seller**.  Seller represents and warrants to Buyer that the statements contained in this Section 3 are true, correct and complete as of the Effective Date and will be true, correct and complete as of the Closing Date.

3.1. <u>Organization of the Seller and Authorization of Transaction</u>. The Seller is a Delaware limited liability company, duly organized and in good standing in the State of Delaware. Seller has full power and authority, including full corporate power and authority, to execute and deliver this Agreement and to perform and consummate its obligations hereunder. This Agreement constitutes the valid and legally binding obligation of Seller, enforceable in accordance with its terms and conditions. The Seller need not give any notice to, make any filing with, or obtain any authorization, consent, or approval of any person, entity, or government or governmental agency in order to consummate the transactions contemplated by this Agreement.

3.2. <u>Noncontravention</u>. Neither the execution and the delivery of this Agreement, nor the consummation of the transactions contemplated hereby, will, immediately or with the passage of time: (A) violate any statute, regulation, rule, injunction, judgment, order, decree, ruling, charge, or other restriction of any government, governmental agency, or court to which the Seller or the Equipment is subject; or (B) conflict with, result in a breach of, constitute a default under, result in the acceleration of, create in any party the right to accelerate, terminate, modify, or cancel, or require any notice under any agreement, contract, lease, license, instrument, or other arrangement to which Seller is a party or by which Seller is bound or to which any of the Equipment is subject.

3.3. <u>Consents</u>. No approval, consent, waiver, or authorization of or filing or registration with any governmental authority or other third party is required for the execution, delivery, or performance by Seller of the transactions contemplated by this Agreement.

3.4. <u>Title to Equipment</u>. As of Closing, Seller shall have good and marketable title to the Equipment, free and clear of all security interests, liens and encumbrances. Other than as expressly set forth herein, the Equipment is being sold "as-is" "where-is" with no representations or warranties of any kind.

3.5. <u>Litigation</u>. Neither Seller nor the Equipment, in whole or in part, as of the Closing Date: (A) is subject to any outstanding injunction, judgment, order, decree, ruling, or charge that would limit, restrict or prevent consummation of the transactions contemplated hereby; or (B) is a party to, or the subject of, or is, to the knowledge of Seller's president, manager(s), and officer(s), threatened to be made a party to, or the subject of, any action, suit, proceeding, hearing, or investigation of, in, or before any court or quasi-judicial or administrative agency of any federal, state, local, or foreign jurisdiction or before any arbitrator that would, if determined adversely to Seller: (1) limit, restrict or prevent consummation of the transactions contemplated hereby; or (2) cause any representation or warranty of Seller herein to be not true.

3.6. <u>Brokers' Fees</u>. Seller has no liability or obligation to pay any fees or commissions to any broker, finder, or agent with respect to the transactions contemplated by this Agreement for which the Buyer could become liable or obligated or for which a lien or encumbrance could be placed on the Equipment.

3.7. Equipment Warranties. Seller warrants to Buyer that (a) the Equipment is new and does not contain used or reconditioned parts, and conforms to the specifications for the Equipment set forth in Exhibit A (the "**Specifications**"); and (b) warranties for the Equipment are available for purchase directly from the manufacturer of the Equipment.

3.8. Disclosure. The representations and warranties contained in this Section 3 do not contain any untrue statement of a fact or omit to state any fact necessary in order to make the statements contained in this Section 3 not misleading.

**4. Representations and Warranties of Buyer**. Buyer represents and warrants to Seller that the statements contained in this Section 4 are true, correct and complete as of the Effective Date and will be true, correct and complete as of the Closing Date.

4.1. Organization of the Buyer; Authorization of Transaction. The Buyer is limited liability company, duly organized and in good standing in the Commonwealth of Massachusetts. Buyer has full power and authority, including full corporate power and authority, to execute and deliver this Agreement and to perform and consummate its obligations hereunder. This Agreement constitutes the valid and legally binding obligation of Buyer, enforceable in accordance with its terms and conditions. The Buyer need not give any notice to, make any filing with, or obtain any authorization, consent, or approval of any person, entity, or government or governmental agency in order to consummate the transactions contemplated by this Agreement.

4.2. Noncontravention. Neither the execution and the delivery of this Agreement, nor the consummation of the transactions contemplated hereby, will, immediately or with the passage of time: (A) violate any constitution, statute, regulation, rule, injunction, judgment, order, decree, ruling, charge, or other restriction of any government, governmental agency, or court to which Buyer is subject; or (B) conflict with, result in a breach of, constitute a default under, result in the acceleration of, create in any party the right to accelerate, terminate, modify, or cancel, or require any notice under any agreement, contract, lease, license, instrument, or other arrangement to which Buyer is a party or by which Buyer is bound.

4.3. Consents. No approval, consent, waiver, or authorization of or filing or registration with any governmental authority or other third party is required for the execution, delivery, or performance by Buyer of the transactions contemplated by this Agreement.

4.4. Litigation. Buyer is not: (A) subject to any outstanding injunction, judgment, order, decree, ruling, or charge that would limit, restrict or prevent consummation of the transactions contemplated hereby; or (B) a party, or, to the knowledge of Buyer's managers or officers, threatened to be made a party, to any action, suit, proceeding, hearing, or investigation of, in, or before any court or quasi-judicial or administrative agency of any federal, state, local, or foreign jurisdiction or before any arbitrator that would, if determined adversely to Buyer: (1) limit, restrict or prevent consummation of the transactions contemplated hereby; or (2) cause any representation or warranty of Seller herein to be not true.

4.5. Brokers' Fees. Buyer has no liability or obligation to pay any fees or commissions to any broker, finder, or agent with respect to the transactions contemplated by this Agreement for which the Seller could become liable or obligated.

4.6. Disclosure. The representations and warranties contained in this Section 4 do not contain any untrue statement of a fact or omit to state any fact necessary in order to make the statements and information contained in this Section 4 not misleading.

**5. Pre-Closing**. Each of the parties hereto will use its reasonable best efforts to take all actions and to do all things necessary, proper, or advisable in order to consummate and make effective the transactions contemplated by this Agreement. From the date hereof until the Closing, the Seller shall use reasonable best efforts to cooperate with Buyer, upon reasonable notice and on a timely basis, in connection with the arrangement and documentation of obtaining the Payoff Documents (as defined below) and giving any other necessary notices to allow for the pay-off, discharge and termination in full at the Closing of all such Seller indebtedness and reasonably cooperating in the replacement, backstop or cash collateralization of any outstanding letters of credit for the account of the Company.

**6. Post Purchase Covenants**. In case at any time after the Closing any further action is necessary or desirable to carry out the purposes of this Agreement, each of the parties hereto will take such further action (including the execution and delivery of such further instruments and documents) as any other party may reasonably request, at the sole cost and expense of the requesting party (unless the requesting party is entitled to indemnification therefore under Section 11 below). Without limiting the foregoing, Seller shall from time to time at the reasonable request of Buyer and without further consideration, execute and deliver such instruments of transfer, conveyance, and assignment in addition to those delivered hereunder, and will take such other actions as Buyer may reasonably request from time to time, to more effectively transfer, convey, and assign to and vest in Buyer, and to put Buyer in possession of, all or any portion of the Equipment.

**7. Conditions to Obligation to Close**.

7.1. Conditions to Obligation of the Buyer. The obligation of the Buyer to consummate the transactions to be performed by it in connection with the Closing is subject to satisfaction of the following conditions: (A) the representations and warranties of Seller set forth in Section 3 shall be true and correct in all material respects at and as of the Closing Date; (B) no action, suit, or proceeding shall be pending or threatened before any court or quasi-judicial or administrative agency of any federal, state, local, or foreign jurisdiction or before any arbitrator wherein an unfavorable injunction, judgment, order, decree, ruling, or charge would: (1) prevent consummation of any of the transactions contemplated by this Agreement, (2) cause any of the transactions contemplated by this Agreement to be rescinded following consummation thereof, or (3) make any of the representations or warranties set forth in Section 3, not true or not correct; (C) Seller has provided to Buyer the contact information for the manufacturer of the Equipment for Buyer to purchase warranties for the Equipment, as described in Section 3.7 hereof; (D) Buyer receives confirmation from qualified personnel, in writing and following the Inspection, that the Equipment conforms to the Specifications and is in good working order; (E) Buyer and William

H. Glancy & Sons, Inc., a Massachusetts corporation ("**Glancy**") shall have entered into the Glancy-MJA Lease (as defined herein); (F) all actions to be taken by Seller in connection with consummation of the transactions contemplated hereby and all certificates, instruments, and other documents required to effect the transactions contemplated hereby will be reasonably satisfactory in form and substance to Buyer; and (G) Seller shall deliver any and all customary payoff letters, lien release letters, and other customary instruments of discharge with respect to any indebtedness owed by Seller on the Equipment (collectively, the "**Payoff Documents**"). Buyer may waive any condition specified in this Section 7.1 if it executes a writing so stating at or prior to the Closing.

7.2. Conditions to Obligation of Seller. The obligation of Seller to consummate the transactions to be performed by it in connection with the Closing is subject to satisfaction of the following conditions: (A) the representations and warranties of Buyer set forth in Section 4 shall be true and correct in all material respects at and as of the Closing Date; (B) no action, suit, or proceeding shall be pending or threatened before any court or quasi-judicial or administrative agency of any federal, state, local, or foreign jurisdiction or before any arbitrator wherein an unfavorable injunction, judgment, order, decree, ruling, or charge would: (1) prevent consummation of any of the transactions contemplated by this Agreement, (2) cause any of the transactions contemplated by this Agreement to be rescinded following consummation, or (3) make any of the representations or warranties set forth in Section 4, not true or not correct; and (C) all actions to be taken by Buyer in connection with consummation of the transactions contemplated hereby and all certificates, instruments, and other documents required to effect the transactions contemplated hereby will be reasonably satisfactory in form and substance to Seller. Seller may waive any condition specified in this Section 7.2 if it executes a writing so stating at or prior to the Closing.

**8. Items to be Delivered**. At the Closing, Seller shall: (1) deliver to Buyer a bill of sale substantially in the form attached hereto as Exhibit B (the "**Bill of Sale**") to transfer and vest in Buyer good and marketable title to the Equipment, free and clear of all liens, security interests, and encumbrances; and (2) make the Equipment available to the Buyer at the leased premises housing the Equipment, located at 235 Bodwell Street, Avon, MA 02322 (the "**Equipment Premises**"), up to the 15th day of February, 2024. Buyer shall arrange to take possession of the Equipment as soon as practicable after the Effective Date, and, for avoidance of doubt, may take possession of the equipment any time before the 15th day of February, 2024 upon ten (10) days prior written notice to Seller. The Seller stores and houses the Equipment ("**Storage and Warehousing**") at the Equipment Premises pursuant to an oral tenancy-at-will (the "**Existing Warehouse Lease**") with Glancy. On or before the Closing Date, Buyer shall have entered into a new written agreement or amendment to the Existing Warehouse Lease with Glancy for the Storage and Warehousing of the Equipment on the Equipment Premises effective as of the Closing Date on substantially equivalent pricing terms as such pricing terms under the Existing Warehouse Lease (the "**Glancy-MJA Lease**"). Buyer shall, within two (2) business days following the Effective Date, commence good faith negotiations with Glancy with respect to the Glancy-MJA Lease and Buyer shall use its best efforts to finalize and execute the Glancy-MJA Lease as soon as practicable following the Effective Date. For avoidance of doubt, as of and after the Closing Date and until Buyer takes possession of all of the Equipment, Buyer shall be responsible for all Storage and Warehousing costs and expenses. At least two (2) business days prior to the Closing, the Seller shall deliver to the Buyer: (a) a schedule setting forth the sources, uses and directions

for the payment of funds used to satisfy the transaction expenses and other payment obligations of the Seller, including, without limitation, existing pre-Closing indebtedness, to be paid at Closing under this Agreement with respect to the consummation of the transactions (the "**Funds Flow**"), and (b) invoices (with wire instructions), as applicable, in respect to all transactions expenses that are identified in the Funds Flow, in form and substance reasonably satisfactory to the Buyer.

8.1 Inspection. As soon as practicable after the Effective Date but in no case later than Closing, Buyer shall arrange for the inspection of the Equipment (the "**Inspection**") by qualified personnel. Such qualified personnel shall confirm to Buyer, in writing, whether, following the Inspection, the Equipment conforms to the Specifications and is in good working order. Buyer shall then provide such written findings to Seller within five (5) business days from the date of receipt of same from such qualified personnel (the "**Inspection Report Delivery Date**").

**9. Remedies for Breach of Warranties; Failed Inspection**. If the Equipment does not comply with the warranties provided in Section 3.7 of this Agreement or fails to pass the Inspection provided in Section 8.1 (any such Equipment, the "**Non-Conforming Equipment**"), in addition to other remedies available at law or in this Agreement, Seller shall, at Buyer's discretion: (a) pay for the reasonable cost of repair or replacement of such Non-Conforming Equipment within thirty (30) business days from the Inspection Report Delivery Date; or (b) at the Closing, reduce the Purchase Price by an amount equal to the reasonable cost of repair or replacement of such Non-Conforming Equipment.

**10. Termination**. The parties hereto may terminate this Agreement as set forth in this Section.

10.1. Buyer Termination Generally. Buyer may terminate this Agreement by giving written notice to Seller at any time prior to the Closing: (A) in the event Seller has breached any material representation, warranty, or covenant contained in this Agreement in any material respect, Buyer has provided Seller with written notice of such breach, and Seller has not cured such stated breach within the five (5) business days of receipt of such written notice; (B) in the event that, following the Inspection, such qualified personnel described in Section 8.1 confirm to Buyer that a material portion of the Equipment constitutes Non-Conforming Equipment and Seller does not cure such failures within thirty (30) business days of the Inspection Report Date; or (C) if the Closing shall not have occurred on or before October 31, 2023, by reason of the failure of any condition precedent under Section 7.1 (unless the failure results primarily from the Buyer breaching any provision, obligation, representation, warranty, or covenant contained in this Agreement).

10.2. Seller Termination Generally. Seller may terminate this Agreement by giving written notice to the Buyer at any time prior to the Closing: (A) in the event the Buyer has breached any material representation, warranty, or covenant contained in this Agreement in any material respect, Seller has provided Buyer written notice of such breach, and Buyer has not cured such stated breach within five (5) business days of receipt of such written notice; or (B) if the Closing shall not have occurred on or before October 31, 2023, by reason of the failure of any condition precedent under Section 7.2 (unless the failure results primarily from Seller itself breaching any provision, obligation, representation, warranty, or covenant contained in this Agreement).

10.3. Effect of Termination. If a party hereto terminates this Agreement pursuant to Sections 10.1(C) or 10.2(B) above, all rights and obligations of the parties hereunder shall terminate without any liability of any party to the other party, except for any liability of a party then in breach. Notwithstanding anything to the contrary in this Agreement, in the event that this Agreement is terminated by Buyer pursuant to Section 10.1(B) or Section 10.1(C) due to circumstances described in Section 7.1(B), or by Seller pursuant to 10.2(B) due to circumstances described in Section 7.2(B), Seller shall return the Deposit and any Additional Deposit, to Buyer within ten (10) business days of the termination of this Agreement.

**11. Indemnification**.

11.1. Seller Indemnification. Seller shall indemnify and hold Buyer harmless from any and all losses, claims, liabilities, damages, obligations, liens, encumbrances, costs and expenses, including reasonable attorney fees, pretrial, trial and appellate, and court costs (collectively being "**Damages**"), that are suffered or incurred by Buyer, in whole or in part, from time to time, and arise as a result of any breach of Seller's covenants, warranties or representations contained in this Agreement or the Bill of Sale by Seller, including but not limited to, the warranties set forth in Section 3.7 hereof.

11.2. Buyer Indemnification. Buyer shall indemnify and hold Seller harmless from any and all Damages that are suffered or incurred by Seller, in whole or in part, from time to time, and arise as a result of: (A) any breach of Buyer's covenants, warranties or representations contained in this Agreement or the Bill of Sale by Buyer; or (B) Buyer's ownership and utilization of the Equipment on and after the Closing Date.

**12. No Third-party Beneficiaries**. This Agreement shall not confer any rights or remedies upon any person other than the parties hereto and their respective successors and permitted assigns.

**13. Entire Agreement, Waiver and Modification**. This Agreement sets forth the entire understanding of the parties hereto concerning the subject matter hereof and incorporates all prior negotiations and understandings. There are no covenants, promises, agreements, conditions or understandings, either oral or written, between them relating to the subject matter of this Agreement other than those set forth herein. No purported waiver by any party hereto of any default by another party hereto of any term or provision contained herein shall be deemed to be a waiver of such term or provision unless the waiver is in writing and signed by the waiving party. No such waiver shall in any event be deemed a waiver of any subsequent default under the same or any other term or provision contained herein. No alteration, amendment, change or addition to this Agreement shall be binding upon any party hereto unless made in writing and signed by the party to be charged.

**14. Notices**. Any consent, waiver, notice, demand, request or other instrument required or permitted to be given under this Agreement shall be in writing and deemed to have been properly given at the earlier of: (A) actual delivery, when delivered in person; (B) when sent to the intended recipient below via e-mail, if sent during normal business hours of the recipient, and if not sent during normal business hours, then on the recipient's next business day; (C) the next business day

DocuSign Envelope ID: AEE7E9C1-C0A4-4CFE-A8B9-7504ECCC1F26

if sent via overnight express courier (e.g., FedEx) to the party's address first set forth above; or (D) three (3) business days after being sent by certified United States mail, return receipt requested, postage prepaid, to the recipient party's address first set forth above. Either party hereto may change its mailing address or e-mail address for notices in the manner set forth herein.

> If to Seller, to:
> Attn: Chad Wise
> Email: Chad@battle-green.com
>
> If to Buyer, to:
> Attn: Jack Keverian
> Email: Jkeveria@gmail.com

**15. Captions**. The captions and paragraph numbers appearing in this Agreement are inserted only as a matter of convenience. They do not define, limit, construe or describe the scope or intent of the provisions of this Agreement.

**16. Applicable Law, Venue and Jurisdiction**. This Agreement shall be construed and governed under and by the laws of the Commonwealth of Massachusetts for contracts entered and to be performed within Massachusetts and without regard for its conflict of laws principles. The parties hereto agree that, except for unaffiliated third party actions, exclusive venue for any legal action arising out of or relating to this Agreement shall be in Suffolk County, Massachusetts, and jurisdiction shall be vested in the Circuit Court of the First Judicial Circuit in and for Suffolk County, Massachusetts, or the United States District Court for the District of Massachusetts, as the case may be. As part of the consideration for the entry of this Agreement by Seller, Buyer agrees not to contest the venue set forth herein and not to contest the exercise of personal jurisdiction over Buyer by any of the foregoing courts. The parties hereto hereby waive all rights concerning the exercise of personal jurisdiction of them by the foregoing courts.

**17. Waiver of Jury Trial**. THE PARTIES HERETO KNOWINGLY AND VOLUNTARILY WAIVE ALL OF THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY ON ANY AND ALL ISSUES PERTAINING TO OR ARISING OUT OF THIS AGREEMENT AND THE EQUIPMENT.

**18. Construction**. The parties hereto have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties hereto and no presumption or burden of proof shall arise favoring or disfavoring any party hereto by virtue of the authorship of any of the provisions of this Agreement. Any reference to any federal, state, local, or foreign statute or law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise. The word "including" shall mean including without limitation. The parties intend that each representation, warranty, and covenant contained herein shall have independent significance. If any party has breached any representation, warranty, or covenant contained herein in any respect, the fact that there exists another representation, warranty, or covenant relating to the same subject matter (regardless of the relative levels of specificity) which

DocuSign Envelope ID: AEE7E9C1-C0A4-4CFE-A8B9-7504ECCC1F26

the party has not breached shall not detract from or mitigate the fact that the party is in breach of the first representation, warranty, or covenant.

**19. Attorney's Fees**. In the event any litigation, mediation, arbitration, or controversy between the parties hereto arises out of or relates to this Agreement, the prevailing party in such litigation, mediation, arbitration or controversy shall be entitled to recover from the other party hereto all reasonable attorneys' fees, expenses and suit costs, including those associated with any appellate proceedings or any post-judgment collection proceedings.

**20. Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same Agreement.

**21. Survival**. Sections 3, 4, 6, 8, 9, and 10 through 19 shall survive the Closing and shall continue in full force and effect thereafter.

*[Signatures on the following page(s). Balance of page intentionally left blank.]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

| | |
|---|---|
| **SELLER:** | **BUYER:** |
| **Battle Green Equipment LLC** <br> **by Battle Green Holdings LLC, its sole member** | **MJA Holdings LLC** |
| *DocuSigned by:* <br> *Chad Wise* <br> 369CBA458A3341B... <br> **By:** Chad Wise <br> **Title:** Authorized Signatory | *DocuSigned by:* <br> *[signature]* <br> 38044711C5B14D4... <br> **By:** Jack Keverian <br> **Title:** Manager |