UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

—————————————————————
                                                    )
MJA HOLDINGS LLC,                                   )
                                                    )
          Plaintiff,                                )        C.A. Docket No. 24-cv-10181
                                                    )
v.                                                  )
                                                    )
BATTLE GREEN EQUIPMENT LLC,                         )
                                                    )
          Defendant.                                )
—————————————————————)

## PLAINTIFF MJA HOLDINGS LLC'S MOTION TO DISMISS DEFENDANT BATTLE GREEN EQUIPMENT LLC'S COUNTERCLAIMS AND TO STRIKE JURY DEMAND AND CERTAIN CLAIMS AND DEFENSES

Plaintiff MJA Holdings LLC (hereinafter "MJA"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f), respectfully requests that this Honorable Court dismiss the counterclaims of Defendant Battle Green Equipment LLC  (hereinafter "BGE"), strike BGE's jury demand, and strike and/or preclude any defense or allegation, including in paragraphs 24 and 25, that MJA waived its right to the return of deposits or amended the Agreement in such a manner.[1]

## I.    BACKGROUND

### A.  The Agreement – Pertinent Terms and Conditions

This case stems from an unambiguous, explicit Purchase and Sale Agreement between MJA and BGE, effective as of August 18, 2023 (the "Agreement") and secured by a $212,757.94 deposit (10% of the purchase price) paid by MJA to BGE, calling for MJA to purchase and BGE to sell 20 dehumidifying air handlers and 2 Trane Chillers (collectively "the Equipment") for the

---

[1] These requests are joined pursuant to Rule 12(g).

1

total sum of $2,127,579.40. *See* Exhibit A to Complaint, Dkt. 1-1 at ¶1; Exhibit B to Complaint, Dkt. 1-2. The Agreement fully sets out the rights and obligations of both parties (the "Parties"). *See* Exhibit A to Complaint, Dkt. 1-1 at ¶ 13. Closing was initially scheduled for September 18, 2023. *See id.* at ¶ 2. Consistent with the Agreement, however, and by express consent between the Parties, the closing was extended three times in 30-day increments upon MJA's payment of three additional deposits of $212,757.94 each. *See id.* at ¶ 1; Complaint at ¶ 11; *see also* Answer at ¶ 11 (admitting consent and that the closing was extended on September 20, 2023, October 17, 2023, and November 15, 2023, and receipt of additional deposits in the amount of $638,273.82). The Parties agreed to a final closing date of December 19, 2023 (the "Closing"). *Id.*

BGE "represent[ed] and warrant[ied]" as "…true, correct and complete as of [August 18, 2023]" that (1) "the Equipment is new and does not contain used or reconditioned parts…" and (2) "warranties for the Equipment are available for purchase directly from the manufacturer of the Equipment." Exhibit A to Complaint, Dkt. 1-1 at ¶3 and ¶3.7; *see also id.* at ¶3.8 ("The representations and warranties contained in this Section 3 do not contain any untrue statement of a fact or omit to state any fact necessary in order to make the statements contained in this Section 3 not misleading.").

The Closing was, *inter alia,* conditioned on (1) "the representations and warranties of Seller … [being] true and correct in all material respects at and as of the Closing Date;" (2) "Seller [] provid[ing] to Buyer the contact information for the manufacturer of the Equipment for Buyer to purchase warranties for the Equipment, as described in Section 3.7 hereof;" and (3) "Buyer receiv[ing] confirmation from qualified personnel, in writing and following the Inspection, that the Equipment conforms to the Specifications and is in good working order." *Id.* at ¶7.1. MJA was entitled to inspect the Equipment to confirm "good working order" and was required to provide

any inspection reports to BGE within five (5) business days from the date of receipt. *Id.* at ¶8.1.

MJA was permitted to terminate the Agreement, upon written notice, to BGE at any time prior to Closing:

> (A) in the event Seller has breached any material representation, warranty, or covenant contained in this Agreement in any material respect, Buyer has provided Seller with written notice of such breach, and Seller has not cured such stated breach within the five (5) business days of receipt of such written notice;

> (B) in the event that, following the Inspection, such qualified personnel described in Section 8.1 confirm to Buyer that a material portion of the Equipment constitutes Non-Conforming Equipment and Seller does not cure such failures within thirty (30) business days of the Inspection Report Date; or

> (C) if the Closing shall not have occurred on or before October 31, 2023, by reason of the failure of any condition precedent under Section 7.1 (unless the failure results primarily from the Buyer breaching any provision, obligation, representation, warranty, or covenant contained in this Agreement).

*Id.* at ¶10.1. Upon termination, MJA was entitled to the return of its deposit and additional deposits (amounting to $851,031.76) within ten (10) business days. *Id.* at ¶10.3.

### B. Inspections and Termination

Upon initial inspection of the Equipment pursuant to Section 8.1 of the Agreement, MJA discovered on or about October 2, 2023, that:

- "[the HVAC units] have been wrapped with what appears to be marine shrink wrap."

- "Spot checked multiple [HVAC units] and upon inspection, found that the rigging eyes on the exterior show some rust indicating that units have sat outdoors for some time."

- "Inspected interior and first section I opened had puddled inside with some sort of algae growth."

- "There is visible condensation in unit."

- "There are also insects present."

- "It looks as though the units have sat for some time and possibl[y] through a winter."

- "The New England weather changes with cool nights and hot days have created condensation and there are visible signs of moisture damage."

- "Hardware in the airstream has been rusted over."

- "3 of the units look like they were struck during shipping which given the size of the units, not surprised if a few hit trees during transport."

- "…recommend a full sanitization and clean, replace rusted hardware in air steam, and store indoors in climate-controlled storage until being brought in for installation."

Exhibit C to Complaint, Dkt.1-3. The October report was timely provided to BGE. The Equipment was re-inspected on or about December 5, 2023, which confirmed that more than half of air handler units continued to suffer from the following substantial defects:

- "I have some concerns with the integrity of the fan motors."

- "It appears that more than ½ of the motor's bearings are audibly loud and stiff. This is most likely the cause of condensation forming in the motors sealed bearings and rusting."

- "Also, there are some transformers that have an excessive amount of rust."

- "My suggestion is replacement of both fan motors in the 11 units and at least ½ of the transformers on the units that were stored outside. My concern is that all the motors are compromised on the 11 outdoor units."

Exhibit D to Complaint, Dkt.1-4.

Additionally, on or about November 30, 2023, the manufacturer of the 20 dehumidifying air handlers, constituting $1,421,243.40 of the total purchase price, informed MJA that there were no manufacturer warranties available to purchase and that the previous warranty expired on June 21, 2023 (two months before the effective date of the Agreement). Complaint, Dkt. 1 at ¶ 15; Exhibit B to Complaint, Dkt.1-2. Notably, BGE does not deny that that manufacturer warranties were unavailable. *See* Counterclaim, Dkt. 11 at 13, ¶¶ 32-33 (alleging BGE attempted to cure "the

inability to offer warranties to MJA for the HVAC Equipment…" which were required to be original manufacturer warranties, by offering itself to "supply MJA with warranties for HVAC Equipment…"). BGE also does not deny that the Equipment suffered from the defects identified during the inspections. *See* Counterclaim, Dkt. 11 at 12-13, ¶¶ 27-28 (obtaining quotes to replace fans).[2]

On December 12, 2023, consistent with the Agreement, MJA, through its pre-litigation counsel,[3] notified BGE in writing about its various breaches, MJA's right to terminate the Agreement ("Notice of Termination"), and provided the requisite five (5) business days to allow BGE to cure. Exhibit E to Complaint, Dkt. 1-5; Exhibit A to Complaint, Dkt. 1-1 at ¶ 10.1. Receiving no response from BGE to the Notice of Termination, MJA formally terminated the Agreement on December 26, 2023, and demanded refund of all deposit payments. *See* Exhibit F to Complaint, Dkt. 1-6. BGE has not returned MJA's deposit or additional deposits, which it was required to do within ten (10) business days of termination. *See* Exhibit A to Complaint, Dkt. 1-1 at ¶ 10.3; *see also* Answer, Dkt. 11 at 4, ¶ 18 ("BGE admits that it has not returned any deposit to MJA…").

### C.  MJA's Claims

MJA filed the instant lawsuit on January 24, 2024, alleging breach of contract (Count One), deceptive trade practices in violation of M.G.L. c. 93A, § 11 (Count Two), and for negligent and/or intentional misrepresentation (Count Three). MJA's claims, *inter alia,* concern BGE's various breaches, including its intentional, reckless, or at the least negligent misrepresentations that the Equipment was new and that manufacturer warranties were available, its failure to cure defects

---

[2] BGE alleges that it obtained an estimate of $66,000 to replace the fans but makes no mention of the other defects identified by the inspections, *e.g.,* the rusted transformers.
[3] Greenspoon Marder LLP, Ryan M. Holz, Esq., of counsel.

associated with the aged, damaged, and faulty air handlers, and its failure to return the deposits per

the Agreement. *See* Complaint, Dkt. 1.

### D.  BGE's Counterclaims

On February 29, 2024, BGE filed its Answer with affirmative defenses and counterclaims

against MJA. *See* Dkt. 11.

Its breach of contract counterclaim (Count One), alleges that:

> MJA materially breached its obligations under the Agreement by, among other things, failing to extend the initial closing date provided for under the Agreement before it expired; failing to close by the outside deadline of October 31, 2023 provided for under the Agreement; identifying non-material breaches of the Agreement as obstacles to closing; and refusing to allow BGE to cure any such alleged non-material breaches of the Agreement prior to MJA's wrongful termination of the Agreement.

Counterclaim, Dkt. 11 at 14, ¶ 38.

Its breach of implied covenant of good faith and fair dealing counterclaim (Count Two)

alleges that:

> MJA's conduct described herein constitutes a breach of the covenant of good faith and fair dealing implied in each of the agreements insofar as MJA's actions in extending the closing date by identifying purported non-material breaches was undertaken solely to extricate MJA from the Agreement even though BGE materially complied at all times with the Agreement; MJA was required to cite purported non-material breaches of the Agreement in order to present a bad-faith claim that it is entitled to retain all deposits that would be forfeited if MJA otherwise terminated the Agreement.

*Id.* at 14-15, ¶ 42.

Its counterclaim under c. 93A § 11 (Count Three) alleges that:

> MJA violated Chapter 93A by, among other things, knowingly and willfully engaging in unfair and deceptive conduct in its dealings with the BGE by inducing BGE to continue to extend the closing dates for the HVAC Equipment until such time that MJA had created a record of purported non-material breaches of the Agreement that it intended to rely upon to demand return of its deposits, which it would have otherwise forfeited had MJA simply terminated the Agreement after MJA determined that it would never close on the HVAC Equipment.

*Id.* at 15, ¶ 46. These claims are implausible, belied by objective evidence, admissions, and omissions, and are thus not legally cognizable as a matter of law.

## II.     REQUEST TO DISMISS

### a.   Rule 12(b)(6) Standard

To survive a motion to dismiss, a claim must set forth a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard demands more than "naked assertion[s]" or "legal conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 564 (2007). Rather, the inquiry focuses on whether the pleading provides "enough factual matter (taken as true) to suggest" a party's liability. *Id.* at 556. The reason for this rule is clear and fundamental: civil discovery and litigation can be expensive, and "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* at 558 (citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79.

Courts conducting a Rule 12(b)(6) analysis should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. After disregarding such conclusory content, courts should then focus on the "well pleaded factual allegations" to "determine whether they plausibly give rise to an entitlement to relief." *Id*. This analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Courts "may infer a lack of relevant facts if the complaint omits them." *McCrohan v. Sandulli Grace, P.C.*, No. 18-CV-10945, 2019 WL 1409303, at *2 (D. Mass. Mar. 28, 2019). Ultimately, "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st

Cir. 2013) (citation omitted).

  **b. Count One – Breach of Contract**

  To sustain a breach of contract claim under Massachusetts law, "plaintiffs must prove that a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiffs' sustained damages as a result of the breach." *Brooks v. AIG SunAmerica Life Assur. Co.,* 480 F.3d 579, 586 (1st Cir.2007). It is not enough to allege, in a conclusory fashion, that the facts demonstrate a breach of contract. *Id.* Rather it is "essential to state with 'substantial certainty' the facts showing the existence of the contract and legal effect thereof." *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 194–95 (1st Cir.1996). The pleading therefore must explain what obligations the alleged contract imposed, and which were breached to avoid dismissal under Rule 12(b)(6). *Id.* at 195.

  While BGE pleads that a contract existed – the same one predicating MJA's claims – none of its alleged breaches constitute a legally cognizable claim.

  First, BGE claims that MJA breached its obligations under the Agreement by "failing to extend the initial closing date provided for under the Agreement before it expired," and by "failing to close by the outside deadline of October 31, 2023, provided for under the Agreement." Counterclaim, Dkt. 11 at 12-13, ¶¶. Raising any issue about the original closing date is both a red herring and disingenuous. BGE admits in its pleading that the closing date was validly extended, pursuant to the terms of the Agreement, on September 20, 2023, October 17, 2023, and November 15, 2023. Answer at ¶ 11. Apparently, BGE is trying to make the point that it could have claimed breach back in September but decided not to do so and instead expressly and repeatedly agreed to further extensions of the closing date. Regardless, there is no actionable "breach" by MJA and BGE's admissions make the belated closing-date claim entirely conclusory and nonsensical.

Even setting aside BGE's admitted agreements to extend the closing dates, the Agreement did not provide for an "outside closing deadline" of October 31, 2023. These important inconsistencies (and admissions against interest) in BGE's allegations foreclose the existence of a plausible entitlement to relief under *Twombly*. *See, e.g.*, *Iselin v. Bama Companies, Inc.*, 690 F. App'x 593, 598 (10th Cir. 2017) (holding that claim that was "both internally inconsistent and devoid of necessary factual allegations" insufficient "to raise a right to relief above the speculative level," as required by *Twombly*); *James v. Gage*, No. 15-CV-106, 2019 WL 1429520, at *14 (S.D.N.Y. Mar. 29, 2019) ("[W]here [the] plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." (alterations in original) (citation omitted). Indeed, there is no way to reconcile BGE's allegations that the contract was breached by a failure to extend the initial closing date back in September of 2023 and, separately, a failure to close by October 31, 2023, with its admissions that the Agreement was validly extended through Party consent on three separate dates, one of which was after October 31, 2023.

Moreover, the October 31, 2023 date BGE alleges as the "outside closing deadline" is only referenced in two provisions of the Agreement, paragraphs 10.1 and 10.2, which allow either party to terminate the Agreement after October 31, 2023 in the event a condition precedent was unfulfilled.[4] *See* Exhibit A to Complaint, Dkt. 1-1 at ¶¶ 10.1 and 10.2. October 31, 2023 was never a "closing date" that governed the Agreement. To the extent that the initial closing date should

---

[4] It bears noting that MJA could have terminated the agreement after October 31, 2023, without going through the reinspection process, without further extending closing or paying an additional $212,757.94 deposit, or without pursing additional due diligence concerning the availability of manufacturer's warranties. This conduct (agreeing to extend the closing dates and making additional conditional deposits), if nothing else, demonstrates MJA's desire to close on the transaction once it confirmed the units were in fact "new" and that it could warranty them with their respective manufacturers.

9

have been extended on September 18 rather than September 20, BGE has long abandoned that claim. *See* Answer at ¶ 11; Counterclaim, Dkt. 11 at 11, ¶¶ 19-20 ("Nevertheless, the parties mutually agreed to extend the closing date on subsequent occasions to allow inter alia MJA to conduct the inspections it requested prior to closing."). Nor can BGE allege damages that resulted from the two-day delay. *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir.1996) (to sustain breach of contract claim, the plaintiffs must plead, *inter alia,* that they "were damaged").

Second, BGE claims that MJA breached the agreement by "identifying non-material breaches of the Agreement as obstacles to closing[] and refusing to allow BGE to cure any such alleged non-material breaches of the Agreement prior to MJA's wrongful termination of the Agreement." Counterclaim, Dkt. 11 at 14, ¶ 38. Both are demonstrably false. The subject representations and warranties were made to be material conditions precedent to Closing by the terms of the Agreement itself. And BGE failed to respond to MJA's demands to cure and its Notice of Termination. BGE does not deny receiving such notices, and thus its claim that it was not "allowed" to cure the breaches rings hollow.

To be clear, BGE's pleadings do not deny that manufacturers warranties were not available for any of the 20 air handlers, constituting more than $1.4 million of the purchase price, or that the air handlers suffered from the defects identified in the inspection reports. *See e.g.,* Counterclaim, Dkt. 11 at 12-13, ¶¶ 27-28, 32-33. It similarly cannot seriously contest that its representations (both at the time the Agreement was executed and at any time prior to closing) were false or that the condition precedents to closing remain unmet. Nothing in the Agreement required MJA to waive these breaches or to excuse BGE's false representations. Instead, its position is that the breaches identified by MJA were "immaterial". While that may certainly be a defense to MJA's breach of contract claims, *see e.g., Skyview Fin. Co., LLC v. Kearsage Trading, LLC*, 651 F. Supp. 3d 353,

362 (D. Mass. 2023), it does not create a breach of contract cause of action for BGE to assert. Indeed, BGE has not and cannot identify any provision of the Agreement that MJA breached. MJA validly extended closings, obtained the required inspections, timely provided the inspection reports to BGE, and after finding out that the Equipment remained non-conforming and that BGE's representations were false, terminated the Agreement in accordance with its terms.

While questions of materiality are generally questions of fact, "[a]s is true of virtually any factual question, if the materiality question in a given case admits of only one reasonable answer (because the evidence on the point is either undisputed or sufficiently lopsided), then the court must intervene and address what is ordinarily a factual question as a question of law." *Gibson v. City of Cranston*, 37 F.3d 731, 736 (1st Cir.1994). MJA respectfully contends that this Honorable Court can and should decide that BGE's obligations to make truthful representations about the condition of the Equipment and about the availability of original manufacturer warranties were material under the Agreement as a matter of law. *See USM Corp. v. Arthur D. Little Sys., Inc.*, 28 Mass. App. Ct. 108, 116 (1989) ("The interpretation of a contract presents a question of law for the court…"). These "representations and warranties" were expressly made by BGE in the Agreement, and BGE acknowledged the materiality of their truthfulness when it further represented and warrantied that the representations and warranties "do not contain any untrue statement of a fact or omit to state any fact necessary in order to make the statements contained in this Section 3 not misleading." Exhibit A to Complaint, Dkt. 1-1 at ¶ 3.7 and ¶3.8. Indeed, MJA's rights to verify the truthfulness of these representations and warranties were conditions precedent to closing. *Id.* at ¶7.1. Moreover, BGE was required to provide MJA with the contact information of the manufacturer, and the representations referred to the "essential qualities" of the Equipment, "in clear and definite language" that MJA relied upon. *See O'Connell v. Kennedy,* 328 Mass. 90,

101 (1951). Such express promises, which are identified and referenced as being important and conditions to Closing in several other provisions of the Agreement, cannot, as a matter of law, be deemed immaterial. *See e.g., USM Corp*, 28 Mass. App. Ct. at 122 (noting that "bargained-for express warranties" are usually "the 'essence of th[e] bargain.'") (internal citation omitted). If this Honorable Court determines that these representations and warranties were material under this Agreement as a matter of law, then BGE's counterclaims must fail for this additional reason.

Similarly, MJA provided BGE with the requisite five (5) business days to cure its breaches. *See* Exhibit A to Complaint, Dkt. 1-1 at ¶10.1. MJA notified BGE about its continued breaches on December 12, 2023. *See* Exhibit E to Complaint, Dkt. 1-5; *see also* Counterclaim, Dkt. 11 at 13, ¶ 32 (acknowledging receipt of the same). Receiving no response, MJA terminated the Agreement on December 26, 2023. *See* Exhibit F to Complaint, Dkt. 1-6. The Agreement did not require more notice or opportunity to cure. BGE's utter failure to respond to the Notice of Termination further illustrates why its counterclaim for breach of contract is implausible.

For these reasons, BGE's breach of contract claim must be dismissed.

### c.   Count Two – Breach of Implied Covenant of Good Faith and Fair Dealing

The implied covenant of good faith and fair dealing between parties to a contract provides that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Druker v. Roland Wm. Jutras Assoc.,* 370 Mass. 383, 348 N.E.2d 763, 765 (1976) (quoting *Uproar Co. v. Nat'l Broadcasting Co.,* 81 F.2d 373, 377 (1st Cir.1936)). The requirement of good faith performance is, however, circumscribed by the obligations in the contract. *AccuSoft Corp. v. Palo*, 237 F.3d 31, 45 (1st Cir.2001). Thus, the covenant may not be invoked to create rights and duties not contemplated by the provisions of the contract or the contractual relationship. *See Uno Restaurants, Inc. v. Bos. Kenmore Realty*

*Corp.*, 441 Mass. 376, 385 (2004); *Dunkin' Donuts Inc. v. Panagakos*, 5 F. Supp. 2d 57, 64 (D. Mass. 1998) ("The implied covenant of good faith cannot override the express terms of a contract."). Nor does the covenant apply where a party has exercised an express contractual power—absent fraud, deceit, or misrepresentation. *See Dunkin' Donuts, Inc. v. Gav–Stra Donuts, Inc.*, 139 F.Supp.2d 147, 156 (D. Mass. 2001) (no breach of covenant where franchise agreement expressly gave defendant the right to terminate the contract under the circumstances, and there was no evidence of fraud, deceit, or misrepresentation by defendant).

Here, BGE alleges that MJA violated the covenant of good faith and fair dealing "in extending the closing date by identifying purported non-material breaches [] undertaken solely to extricate MJA from the Agreement even though BGE materially complied at all times with the Agreement; MJA was required to cite purported non-material breaches of the Agreement in order to present a bad-faith claim that it is entitled to retain all deposits that would be forfeited if MJA otherwise terminated the Agreement." Counterclaim, Dkt. 11 at 14-15, ¶ 42. This claim fails for two reasons.

First, the Agreement is clear that MJA was expressly permitted to unilaterally extend the closing date upon "two (2) business days' prior written notice thereof" (regardless of any material or immaterial breach) and, as BGE acknowledges in its allegations, the closing date was extended by agreement of the Parties to "allow *inter alia* MJA to conduct the inspection." Exhibit A to Complaint, Dkt. 1-1 at ¶1; Counterclaim, Dkt. 11 at 11, ¶ 20. Indeed, at the time that closing was first extended, MJA did not identify any breach of the Agreement. MJA only identified breaches once the October inspection and December reinspection were conducted, and after it learned from the manufacturer, rather than BGE (which concealed the information), that the extended warranties it bargained for were unavailable for much of the Equipment. Predicating an extension of the

13

closing date on a breach or even requiring BGE's consent (which it provided, nonetheless) would impermissibly modify the express provisions of the Agreement. *See Uno Restaurants, Inc.*, 441 Mass. at 385.

Second, MJA's exercise of its express, unilateral power to extend the closing date, pursuant to paragraph 1, and then to terminate the Agreement, pursuant to paragraph 10.1, once it learned of BGE's falsehoods (and BGE chose to ignore demands to cure and the Notice of Termination) is not a breach of the covenant of good faith and fair dealing as a matter of law and common sense. *See Gav–Stra Donuts, Inc.*, 139 F.Supp.2d at 156; *see also Piantes v. Pepperidge Farm, Inc.*, 875 F. Supp. 929, 938 (D. Mass. 1995). By BGE's own allegations, MJA substantially complied with the terms of the Agreement, the closing was validly extended to permit inspection, and by its own admissions, the breaches – whether "material" or not – existed. MJA was entitled to terminate the Agreement (including because BGE chose to ignore the Notice of Termination) and to obtain the return of its deposits once BGE made false representations – effectively when it signed the Agreement on August 18, 2023 – and certainly once it failed to cure its breaches – five (5) business days following December 12, 2023. In short, the extension of the closing date which MJA was entitled to under the Agreement – other than to provide MJA time to inspect and investigate – did nothing to cause the breaches or BGE's false representations which largely occurred when the Agreement was executed. MJA asserting its rights under the Agreement to truthful representations and rights to obtain manufacturer warranties and new Equipment free from defects – the essence of BGE's claims – is not bad faith. Absent particularized allegations of fraud, deceit, or misrepresentation, which are absent here, BGE's good faith and fair dealing claim is conclusory and inconsistent with the clear terms of the Agreement, and thus must be dismissed.

14

### d.   Count Three – M.G.L. c. 93A § 11.

To state a claim under M.G.L. c. 93A § 11, BGE must allege an "unfair or deceptive" act, which must "attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Quaker State Oil Ref. Corp. v. Garrity Oil Co.,* 884 F.2d 1510, 1513 (1st Cir.1989) (quoting *Levings v. Forbes & Wallace Inc.,* 8 Mass.App.Ct. 498, 396 N.E.2d 149, 153 (1979)). In other words, a party bringing a 93A action must establish "that the defendant's actions fell 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness,' or were 'immoral, unethical, oppressive or unscrupulous,' and resulted in 'substantial injury ... to competitors or other businessmen.'" *Tagliente v. Himmer*, 949 F.2d 1, 7 (1st Cir. 1991) (quoting *Levings v. Forbes & Wallace, Inc.,* 8 Mass.App.Ct. 498, 396 N.E.2d 149, 153 (1979)).

Importantly, BGE's 93A claims are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See Rick v. Profit Mgmt. Assocs.*, No. 15-CV-11171, 2018 WL 5114168, at *4 (D. Mass. Oct. 19, 2018). Rule 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Accordingly, to survive dismissal, the claim must "include specifics about 'the time, place, and content of the alleged false representations.'" *Thout v. Deutsche Bank Nat'l Tr. Co.*, No. 18-CV-40053, 2019 WL 1430120, at *4 (D. Mass. Mar. 29, 2019) (Hillman, J.) (quoting *Juarez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 279–80 (1st Cir. 2013)). This requirement is not trivial, and surmise, conjecture, and speculation cannot support the claim. "[M]ere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated." *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985).

BGE surmises that MJA engaged in unfair and deceptive conduct "by inducing BGE to continue to extend the closing dates for the HVAC Equipment until such time that MJA had created a record of purported non-material breaches of the Agreement that it intended to rely upon to demand return of its deposits, which it would have otherwise forfeited had MJA simply terminated the Agreement after MJA determined that it would never close on the HVAC Equipment." Counterclaim, Dkt. 11 at 15, ¶ 46. This is not only rank speculation, but is belied by pleaded, undisputed facts, including that two inspections occurred, multiple conditional deposits were paid, lawyers were involved in providing full and proper notice on behalf of MJA, and BGE admitted that a substantial number of fans/motors needed to be replaced and that manufacturer warranties could not be obtained. Indeed, the facts pleaded by the Parties illustrate why and how BGE engaged in deceptive, bait-and-switch conduct because its primary representations and warranties about the essential qualities of the Equipment were false at the time it entered into the Agreement. Its counterclaim in this regard is not equivalent and should be seen for what it is.

Further, BGE fails to allege with any particularity required under Rule 9(b) how MJA "unfair[ly] or deceptive[ly]" induced it to extend the closing dates. Entirely missing from BGE's pleadings is the "the time, place, and content" of the alleged false representations or the deceptive statements that induced it to extend the closing date. *Thout,* No. 18-CV-40053, 2019 WL 1430120, at *4 (internal citations and quotations omitted); *Equip. & Sys. For Indus., Inc. v. Northmeadows Const. Co*, 59 Mass. App. Ct. 931, 931–32 (2003) ("At a minimum, a plaintiff alleging fraud must particularize the identity of the person(s) making the representation, the contents of the misrepresentation, and where and when it took place."). As explained in detail above, MJA had the unilateral, express power under the Agreement to extend the closing date. Simply put, MJA did not need to induce BGE's assent to the extensions, because BGE's assent was never required.

Finally, none of the conduct BGE cites throughout its complaint reaches the level of "rascality" required under the statute, particularly given that MJA made multiple conditional deposit payments and provided detailed inspection report findings to BGE. *See e.g., Equipment & Systems For Industry, Inc. v. Northmeadows Const. Co., Inc.*, 59 Mass App. Ct. 931, 932 (2003) (no chapter 93A violation where defendant contractor was interested in purchasing a piece of equipment from the plaintiff and then simply refused to go through with the purchase); *Skyview Fin. Co., LLC v. Kearsarge Trading, LLC*, 616 F. Supp. 3d 152, 157 (D. Mass. 2022) (even a "[b]reach of contract, without more, does not amount to a 93A violation.").

## III.   REQUEST TO STRIKE

Irrespective of the motion to dismiss, this Honorable Court should strike BGE's jury demand, which is foreclosed by the Agreement, and strike and/or preclude any defense or allegation by BGE that MJA waived its rights to the return of the deposits, including paragraphs 24 and 25, because BGE's allegations do not and cannot state a claim of waiver or contractual amendment.

Pursuant to Fed. R. Civ. P. 12(f), this Honorable Court may strike from "a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Immaterial matter under Rule 12(f) is defined as:

> that which has no relationship to the cause of action pled. The presence of immaterial allegations in a complaint can rise to the level of prejudice when the matter complained of has the effect of confusing the issues or where it is so lengthy and complex that it places an undue burden on the responding party.

*Leader v. Harvard Univ. Bd. of Overseers*, No. CV 16-10254-DJC, 2017 WL 1064160, at *7–8 (D. Mass. Mar. 17, 2017) (internal citation omitted).

MJA respectfully requests that BGE's jury demand be stricken. Counterclaim, Dkt. 11 at 16. Pursuant to the Agreement, both parties knowingly and voluntarily waived their rights to a jury

trial, *see* Exhibit A to Complaint, Dkt. 1-1 at ¶17, and neither party contests the validity of the Agreement. Accordingly, the jury demand should be stricken.

MJA also requests this Honorable Court to strike and/or preclude any defense or allegation, including paragraphs 24 and 25, that MJA waived its right to the return of deposits or amended the agreement in such a manner. Paragraphs 24 and 25 state:

> 24.     On November 17, 2023, prior to arranging these extended, bifurcated closing dates, BGE, through counsel, informed MJA, through counsel, that all deposits on-hand with BGE were deemed non-refundable because MJA was in breach of Section 10.2(B) of Agreement, and that if the parties continued to extend the closing dates, BGE was within its rights under the Agreement to treat all deposits made by MJA as non-refundable.
>
> 25.     In response, MJA's counsel did not object and agreed to convey BGE's stated position to MJA.

Counterclaim, Dkt. 11 at 12.

BGE is claiming through these paragraphs that MJA either waived the right to recover its deposit payments or that it agreed (orally) to modify the express rights stated in the Agreement, despite the express provisions in the Agreement to the contrary and regardless of whether BGE breached the warranty and other provisions of the Agreement. This waiver and/or modification claim or defense is deficient as a pure matter of law.

Even if BGE verbally informed MJA's pre-litigation counsel and counsel agreed to convey and did not himself object to BGE's position that it deemed the deposit and additional deposits non-refundable, such is of no consequence to MJA's claims in this action and did not create a legal waiver or an amendment of the Agreement. A claim of waiver "must meet the 'uncompromising' standard for waiver under Massachusetts law: proof of 'clear, decisive, and unequivocal conduct on the part of an authorized representative ... indicating that [it] would not insist on adherence to the [agreement].' *Gav–Stra Donuts, Inc.*, 139 F. Supp. 2d at 157. Thus, waiver requires

"affirmative conduct" and not "mere silence" *Id.* ("When judged by the uncompromising standard for waiver, this lack of response does not constitute a waiver."). Accordingly, the allegations in paragraphs 24 and 25 are insufficient as a matter of law to establish a waiver.

To the extent BGE is claiming that the Parties' rights under the Agreement were modified, the Agreement expressly provides that "[n]o alteration, amendment, change or addition to this Agreement shall be binding upon any party hereto unless made in writing and signed by the party to be charged." Exhibit A to Complaint, Dkt. 1-1 at ¶13. BGE does not allege any formal modification of the Agreement. As such, it cannot sustain a claim that the deposits are nonrefundable because that claim is directly contradicted by the Agreement.

For this reason alone, any defense or allegation, including paragraphs 24 and 25, that the Parties agreed to change the Agreement and make the deposit payments nonrefundable must be stricken and precluded.

## IV.    CONCLUSION

For all the foregoing reasons, MJA respectfully requests this Honorable Court to dismiss BGE's counterclaims, strike BGE's jury demand, and strike and/or preclude the waiver and modification claims about nonrefundable deposit payments.

<u>**COMPLIANCE WITH LOCAL RULE 7.1(a)(2)**</u>

The undersigned counsel has conferred with counsel for Defendant Battle Green Equipment LLC, who by and through Kenneth Sherman, opposes the requested relief.

Respectfully submitted,

MJA HOLDINGS LLC

By its attorneys,

Dated:  March 21, 2024          MAKSIM NEMTSEV P.C.
         Boston, MA

By:    */s/ Maksim Nemtsev*
       Maksim Nemtsev, Esq.
       *Attorneys for Plaintiff*
       20 Park Plaza, Suite 1000
       Boston, Massachusetts 02116
       P: (617) 227-3700
       max@mnpc.law

HARTER SECREST & EMERY LLP
***ADMITTED PRO HAC VICE***

By:    */s/ Sheldon K. Smith*
       Sheldon K. Smith, Esq.
       Ryan C. Altieri, Esq.
       *Attorneys for Plaintiff*
       50 Fountain Plaza, Suite 1000
       Buffalo, New York 14202
       P: (716) 853-1616
       F: (716) 853-1617
       ssmith@hselaw.com

## CERTIFICATE OF SERVICE

I, Maksim Nemtsev, hereby certify that on this date, March 21, 2024, a copy of the foregoing documents has been served via Electronic Court Filing system on all registered participants.

**/s/ Maksim Nemtsev**
Maksim Nemtsev, Esq.

20