**THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

| | |
|---|---|
| MJA HOLDINGS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BATTLE GREEN EQUIPMENT LLC, | ) |
| | ) |
| Defendant. | ) |

Docket No. 24-CV-10181-(WGY)

_____

**DEFENDANT BATTLE GREEN EQUIPMENT LLC'S OPPOSITION TO
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND TO
STRIKE JURY DEMAND AND CERTAIN CLAIMS AND DEFENSES**

Defendant/Plaintiff-in-Counterclaim Battle Green Equipment LLC ("BGE") respectfully submits this Memorandum in Opposition to the Motion of Plaintiff/Defendant-in-Counterclaim MJA Holdings LLC ("MJA") to Dismiss BGE's Counterclaims and to strike the jury demand and certain claims and defenses made therein (the "Motion") pursuant to Fed. R. Civ. P. 12(b)(6). As set forth herein, the Motion should be denied as BGE's Counterclaim sets forth causes of action which plausibly entitle it to relief.

## INTRODUCTION

This action arises out of a contract between BGE and MJA for the sale and purchase of certain HVAC equipment. Both parties have asserted claims alleging material breaches of the other's contractual obligations and related to the conduct surrounding the same. There are significant factual and legal disputes between the parties, as demonstrated by MJA's assertion of counter-facts in the Motion, but only BGE's facts are entitled to be taken as true and afforded all reasonable inferences for the purposes of this Motion. In sum, BGE alleges that MJA made efforts to extricate itself from the parties' agreement because it was unwilling or unable to fulfill its obligations thereunder. However, MJA could not simply terminate the agreement without forfeiting non-refundable deposits made to BGE, so MJA pushed forward in the absence of good faith and with apparent intent to create the appearance of a breach by BGE to obtain return of the deposits, stripping BGE of its benefit. All reasonable inferences in BGE's favor support this conclusion. That MJA's alleged scheme was not particularly straightforward or sensible should not, and does not, inure to its benefit in considering BGE's allegations. Despite MJA's arguments, BGE contends that discovery in this matter will bear out the facts and further support its allegations as plausibly described herein.

1

## STATEMENT OF FACTS AS ALLEGED

In March 2023, the parties began discussing a proposed agreement under which MJA would purchase from BGE certain unused Dehumidifying Air Handlers Units ("AHUs") and Trane Chillers ("Chillers") (together, the "Equipment"). *See* Counterclaim ("Counter.") ¶ 4.[1] Specifically, these discussions took place between MJA's manager, Jack N. Keverian ("Keverian"), and one of BGE's managers, David W. Ellis ("Ellis"), primarily through text message communications. *Id*. ¶¶ 4-5. BGE had purchased the Equipment for a construction project that did not go forward and needed to resell the Equipment to avoid a loss. *Id*. ¶ 1.

In March and April of 2023, Ellis became concerned that MJA may not have the financial ability to purchase the Equipment as it represented, which would undermine the fundamental purpose of the agreement. *Id*. ¶ 6. If MJA could not finance the purchase, BGE needed to timely secure another buyer who could, and complete the sale of the Equipment. Before moving forward, BGE requested proof of sufficient funds to demonstrate that MJA could move forward with the contemplated closing for the Equipment. *Id*. ¶¶ 6-7. In response to BGE's concerns, Keverian provided and represented that MJA had access to certain funds to purchase the Equipment through a cryptocurrency holding company purportedly owned by him, even providing screenshots of a check made out to the holding company. *Id*. ¶ 8.

As a result of these assurances and representations that MJA was able to fulfill the anticipated obligations, On April 26, 2023, BGE provided MJA with an equipment pricing list and warranty information and options for the Chillers for MJA to choose from. *Id*. ¶ 9. Shortly thereafter, on May 8, 2023, BGE provided MJA with a draft of what would ultimately become the Equipment Purchase Agreement (the "Agreement"). *See* Exhibit A to Complaint ("Compl.")

---

[1] For clarity, BGE shall cite to its Answer and Counterclaim (ECF No. 11) as either "Ans. ¶" or "Counter. ¶" to avoid duplicative paragraph numbers therein between the two sections. Citations to the Agreement shall be "Agmt. ¶".

Despite receiving the equipment list, warranty information, and Agreement, MJA substantially delayed providing any substantive response to BGE's draft of the Agreement. BGE attempted to confirm the status of the Agreement and MJA's review of the same for months. *See* Ans. ¶ 11. MJA finally responded in late July 2023, approximately five months after the initial discussions began. At that time, BGE learned that contrary to Keverian's representations, MJA was not planning to purchase the Equipment using the funds tendered to Keverian's cryptocurrency company. *Id*. ¶ 13. Concerned that MJA would not have the ability to close on the sale as contemplated by the Agreement, BGE inquired again about the same. In response, Keverian alluded to various, vague sources of funding such as an international investor and "financing" (*id*. ¶ 14) and confirmed MJA's ability to fulfill the material obligations of the Agreement.

<u>Relevant Material Terms of the Agreement</u>

Finally, after months of delay by MJA, to the detriment of BGE, the parties entered into the Agreement on August 18, 2023. The Agreement provided that MJA shall purchase twenty (20) AHUs at a total sale price of $1,421,243.40 and two (2) Chillers at a total sale price of $706,366.00 for a total contract value of $2,127,579.40. *See* Agmt. The Agreement provided a closing date of September 18, 2023. *Id.* § 1. As required under the Agreement, MJA deposited a sum of $212,757.94 with BGE.

Section 1 of Agreement provided that MJA

> may extend the Closing Date for additional periods of thirty (30) days upon two (2) business days' prior written notice thereof to [BGE] and no later than two (2) business days prior to the Closing Date or Extended Closing Date … provided, however, that upon such an Extension, [MJA] shall deliver to [BGE] …an additional 10% of the Purchase Price …"

A material term of the Agreement provides that MJA's deposits are "refundable [ ] solely under the circumstances expressly set forth in Section 10.3" of the Agreement. *Id*. § 1. Section 10.3 provides three circumstances in which MJA may obtain a refund of deposits, described below.

Case 1:24-cv-10181-WGY   Document 19   Filed 04/04/24   Page 5 of 22

- **§10.1(B):** Termination by MJA following an inspection by a qualified party who confirms that a <u>material portion</u> of the Equipment is non-conforming as defined in the Agreement, and BGE fails to cure the material non-conforming defects within 30 days of the report.

- **§10.1(C), due to circumstances described in §7.1(B):** Termination by MJA if the closing has not occurred by October 31, 2023, due to failure of a condition precedent under §7.1(B), which provides that no legal action or judgment prevents or disturbs the terms of the sale.

- **§10.2(C), due to circumstances described in §7.2(B):** Termination by BGE if the closing has not occurred by October 31, 2023, due to failure of a condition precedent under §7.2(B) which provides that no legal action or judgment prevents or disturbs the terms of the sale.

Each party was obligated under the Agreement to "use its reasonable best efforts to take all actions and to do all things necessary, proper, or advisable in order to consummate and make effective the transaction contemplated by this Agreement" (*id*. § 5), and MJA was to arrange for an inspection "as soon as practicable" in order to timely close the sale. *Id*. § 8.1.

<u>MJA's Breaches and Termination</u>

By September 18, 2023, the contractually agreed-upon closing date, MJA failed to both conduct a timely inspection and secure an extension of time to close pursuant to the Agreement. *See* Counter. ¶18. MJA's failure to close by September 18 or notice an extension of the closing date before September 16, 2023 was a material breach. At this point, assuming MJA was unwilling or financially unable to purchase the Equipment (a reasonable inference given the financing concerns and inexplicable closing delays), it was faced with losing its deposit or conducting an inspection and claiming a breach based on any imperfect result. Apparently, it chose the latter.

In good faith and in keeping with the Agreement's express and implied requirements to use best efforts to effectuate the sale, BGE agreed to allow MJA to conduct a belated inspection of the Equipment and extend the closing date by 30 days, with the submission of an additional 10% deposit as required by the Agreement. *Id*. ¶ 20. Though MJA was required to submit an additional deposit, this path afforded it the opportunity to regain *all* funds expended, including the initial nonrefundable deposit.

MJA conducted the first of its cursory, cosmetic inspections on September 23 and 29, 2023 and produced a report dated October 2, 2023. *Id.* ¶ 21. The "report" is nothing more than an invoice document containing a paragraph with MJA's inspector's conclusions. *See* Exhibit C to Compl. Nonetheless, the report identified purely cosmetic issues with a small, non-material portion of the Equipment, which according to MJA's inspector's own report, merely required cleaning, rust removal, and to have certain of the outdoor-rated equipment moved indoors until closing. *Id.*

MJA apparently sought to create a "material breach" through the purported inspection report (the veracity of which BGE denies), which would allow it to retain the deposits and avoid further payment obligations under the Agreement. However, despite its disagreement with the report's alleged findings, BGE agreed to conduct the requested cosmetic work in good faith to satisfy MJA and cure any purported (and disputed) nonmaterial breach(es). BGE's curative action impeded MJA's ability to terminate the Agreement and obtain a refund of all deposits pursuant to §10.3 and § 10.5 of the Agreement. Notably, at this time, BGE caused these purported issues to be cured even though it was in material compliance with the Agreement and could have terminated the Agreement and retained the deposits on-hand as of the date of the October 2, 2023 report.

The parties discussed extending the closing again to allow for MJA's requested non-material work. On November 17, 2023, prior to agreeing to the final extended closing date, BGE, through counsel, informed MJA, through counsel, that all deposits on-hand with BGE were deemed non-refundable because MJA was in breach of Section 10.2(B) of Agreement, and that if the parties continued to extend the closing dates, BGE was within its rights to treat all deposits made by MJA as non-refundable. *Id.* ¶ 24. MJA's counsel did not object and MJA did not contest this assertion which, drawing all reasonable inferences, was communicated to it by its counsel.

After this disclosure, MJA continued to move forward with extending the closing dates for a final time, affirming its alleged intent to carry out the Agreement. However, still in need of an out, MJA conducted a re-inspection of the Equipment after its requested cosmetic remedies and produced an invoice containing a "report" on December 5, 2023. *See* Exhibit D to Compl. This time its inspector's "report" concluded that while the cosmetic issues had been resolved, there were *new* alleged issues with the Equipment. *Id*. ¶ 26. The new issues, even if accurate, were not material. The total allegedly defective portion of the Equipment amounted to an immaterial sum of less than four percent (4%) of the total purchase price for the Equipment. *Id*. ¶ 29.

On December 12, 2023, MJA wrote to BGE demanding that it cure the purported defects identified by MJA's inspector, and another alleged non-material breach: the alleged inability to offer warranties to MJA for the Equipment. Although BGE disagrees, it continued to act in good faith in accordance with the Agreement. BGE informed MJA that it intended to cure the alleged non-material defects present in 4% of the Equipment by offering MJA a credit at closing, in accordance with the Agreement, and that it could supply MJA with warranties for the Equipment sufficient to ensure that MJA would not incur future repair and replacement costs for the Equipment, even though neither alleged breach was material in any respect. *Id*. ¶ 28-31.

BGE's permitted remedy would result in MJA's continued inability to claim entitlement to return of the deposits if it failed to consummate the sale. *See* Agmt. § 10.1(B). As a result, MJA refused to accept the offers and wrongfully terminated the Agreement, citing alleged material breaches, demanding a return of all (non-refundable) deposits, and depriving BGE of its cure rights under the Agreement.

**LEGAL STANDARD**

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court should accept as true all allegations in the complaint, as well as any inferences that may be drawn therefrom. A motion to dismiss should not be granted for failure to state a claim "if the complaint satisfies Rule 8(a)(2)'s requirement of a short and plain statement of the claim showing that the pleader is entitled to relief." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 11 (1st Cir. 2011). The standard was clarified following the Supreme Court's decision in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Under this standard, "a complaint must contain 'sufficient factual matter' to state a claim for relief that is actionable as a matter of law and 'plausible on its face.'" *MIT Fed. Credit Union v. Cordisco*, 470 F. Supp. 3d 81, 84 (D. Mass. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) and *Twombly*, 550 U.S. 544, 570). "A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

A court "may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Ocasio-Hernandez*, 640 F.3d at 12-13 (quoting *Twombly,* 550 U.S. at 556). "[T]he requirement of plausibility on a motion to dismiss under Rule 12(b)(6) 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the illegal [conduct].'" *Id*. at 17 (quoting *Twombly,* 550 U.S. at 556). "The court neither weighs the evidence nor rules on the merits because the issue is not whether plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims." *O'Hara v. Diageo-Guinness, USA, Inc.*, 370 F. Supp. 3d 204, 212 (D. Mass. 2019) (internal quotation omitted).

## ARGUMENT

### I.   THE FACTS AS ALLEGED STATE A CLAIM OF BREACH OF CONTRACT.

#### A.  The Counterclaim Sets Forth a Plausible Claim of Breach of Contract.

MJA argues that BGE has not set forth a claim of breach of contract based on MJA's interpretation of the facts and contractual provisions at issue, despite BGE's contrary allegations which control for the purposes of this Motion. MJA's assertions of contrary fact are inappropriate in this format.

Through its Counterclaim, BGE alleges that (1) it entered into a contract with MJA, (2) it performed, and was prepared to continue, material performance under the Agreement, (3) MJA materially breached provisions of the Agreement, and (4) BGE was damaged by MJA's breaches, including by its wrongful termination of the Agreement and demand for return of deposits made thereunder. BGE specifically alleges that MJA materially breached the Agreement by failing to conduct an inspection prior to the closing date pursuant to § 8.1, failing to secure an extension of the closing date prior to its expiration in accordance with § 1, failing to close prior to October 31, 2023 under § 10.2, failing to make good faith efforts to carry out and effectuate the closing of the sale under § 5, and by improperly terminating the Agreement contrary to its terms.

MJA also alleges that BGE has not been damaged by its breaches of the Agreement. BGE need not allege a precise amount of damages at this time, but alleges that it has been damaged by MJA's breaches in an amount to be determined at trial. More specifically, BGE has been damaged by the cost of the cosmetic work insisted upon by MJA, the lost sale costs, the lost opportunity costs, and additional categories of damages. [2]

---

[2] Should the Court find that MJA must set forth its damages more specifically, BGE respectfully requests leave to amend the Counterclaims to include additional allegations and supplemental detail concerning its damages.

**B.  MJA's Argument Fails Under Rule 12(b)(6) Because it Relies on MJA's Own Version of the Facts and Ignores or Mischaracterizes BGE's Allegations.**

While the parties each allege the existence of a valid contract between them, each party alleges that the other committed a material breach of its obligations thereunder. In its Motion, MJA impermissibly attempts to supplant the facts as plausibly alleged in the Counterclaim with its own account and conclusions as stated in the Complaint.

First, MJA mischaracterizes the allegations in the Counterclaim to comport with its allegations in the Complaint. The mischaracterizations include but are not limited to claims that BGE pled that MJA "validly" extended the Agreement closing date (*see* Motion at 8, 9, 11) and that "BGE has not and cannot identify any provision of the Agreement that MJA breached" (*id*. at 11). These allegations are demonstrably false and fail to consider (let alone *credit*) the facts as alleged in the light most favorable to BGE. In fact, BGE specifically alleges that MJA failed to extend the closing date in accordance with the material terms of the Agreement (*see e.g.* Counter. ¶ 19) and alleges that MJA breached specific material provisions of the Agreement (*see e.g. id*. ¶¶ 18-19, 24, 38).

Further, MJA seeks to argue the merits of the Counterclaim in its Motion despite the fact that no factual record has been developed. MJA seeks to introduce arguments as to purported mindsets and motives of the parties, and ignores the facts as pled. For example, MJA argues that BGE cannot maintain a breach of contract claim because:

> BGE has not and cannot identify any provision of the Agreement that MJA breached. MJA validly extended the closing, obtained the required inspections, timely provided the inspection reports to BGE, and after finding out that the Equipment remained non-conforming and that BGE's representations were false, terminated the Agreement in accordance with its terms.

Motion at 11.

9

Each and every one of the allegations in this argument are directly disputed by the allegations in the Counterclaim and the facts set forth therein. MJA is not entitled to a presumption that its interpretation of the facts is correct and, in fact, must accept the facts set forth by BGE. That MJA has a differing opinion of the facts or a different interpretation of the contract underlying the dispute does not create a basis for dismissal, and must be set aside.

Notwithstanding MJA's attempts to override BGE's allegations with its own, BGE has made plausible allegations as to each of the breaches listed above. The parties disagree as to the facts and as to the interpretation and application of the relevant contractual provisions underlying the Complaint and Counterclaim. While BGE is confident that these issues will be borne out through discovery and briefing at later stages, it is under no obligation to prove its claims in its initial notice pleading.

## C. Relevant Materiality and Contract Interpretation Issues Cannot be Appropriately Addressed at This Stage, and MJA's Argument to the Contrary is Unsupported.

BGE has alleged that MJA was in material breach of the Agreement by failing to abide by specifically identified terms, that BGE was in material compliance with its obligations, and has provided support for these allegations by describing events and communications between the parties. MJA requests that this Court make findings at the pleading stage as to the interpretation and materiality of the contract provisions MJA deems relevant, and accept its counter-factual assertions that BGE breached those material provisions while MJA abided by them.

MJA correctly acknowledges that materiality is an issue of fact. *See Bridge Over Troubled Waters, Inc. v. Argo Tea, Inc.*, 220 F. Supp. 3d 213, 218 (D. Mass. 2016) (Young, J.). Nonetheless, it requests that this Court take the significant step of converting the factual question to a legal one and make findings based solely on notice pleadings containing disputed factual information, and that it disregard the Rule 12(b)(6) standard of weighting the claimant's allegations.

10

As support for this extraordinary request, MJA relies on inapposite cases. Tellingly, neither of these cases pertain to findings under a Rule 12(b)(6) (Motion to Dismiss for Failure to State a Claim) standard and both expressly consider the weight of the complete factual record in making the determination. *See Gibson v. City of Cranston*, 37 F.3d 731, 735 (1st Cir. 1994) (applying Rhode Island state law) (analyzing evidence in consideration of judgment as a matter of law after trial); *USM Corp. v. Arthur D. Little Sys., Inc.*, 28 Mass. App. Ct. 108 (1989) (analyzing evidence in consideration of summary judgment).

In fact, while MJA quotes *USM Corp.* as stating that contract interpretation is a matter of law for the court, it conspicuously fails to include the entirety of the court's finding. The Appeals Court stated: "The interpretation of a contract presents a question of law for the court, <u>except to the extent disputed facts bear upon such interpretation</u>." *USM Corp.*, 28 Mass. App. Ct. at 116 (emphasis added). The court went on to state:

> Extrinsic evidence bearing upon the background and purpose of the parties, as well as their understanding of the meaning of particular language used in the contract, may be considered both in the construction of ambiguous contract language and in resolving uncertainties in applying the terms of the written contract to the subject matter.

*Id.* Similarly, the First Circuit in *Gibson* (applying Rhode Island state law) stated *at summary judgment* that if a materiality question has "only one reasonable answer (<u>because the evidence on the point is either undisputed or sufficiently lopsided</u>) then the court must intervene …" *Gibson*, 37 F.3d at 735 (emphasis added). The First Circuit's reasoning is entirely inapposite to this Motion to Dismiss. Aside from the obvious difference in burden standards, the parties have not had *any* opportunity to discover or present evidence on which the Court may base its finding. Moreover, it is certainly not the case that "only one reasonable answer" can be found here, especially crediting BGE's allegations with the appropriate weight. MJA's conclusions about

determinations as a "matter of law" each depend on factual determinations which have not, and cannot, be accurately made yet.[3]

MJA's request that this Court make findings of materiality, contract interpretation, and breach without any factual record before it does not comport with the purported authority it relies upon. In fact, MJA has not advanced any support for its argument that such a finding should be made at this pleading stage. BGE requests that this request be denied, permitting it the opportunity to conduct discovery, and present evidence in support of its claims.

## II.    THE FACTS AS ALLEGED STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

The Counterclaim sets forth MJA's breaches of the implied covenant of good faith and fair dealing, including by MJA's bad-faith efforts to manufacture alleged "breaches" in order to extricate itself from the Agreement while obtaining a refund of the deposits that BGE would otherwise be entitled to. Though it failed in finding that BGE committed a material breach, it terminated the Agreement on that purported basis anyway and seeks to take from BGE the deposits that it would be entitled to retain had MJA truthfully terminated the Agreement based on its apparent inability to finance the purchase of the Equipment.

### A.    BGE Alleges Deprivation of the Benefits of the Agreement Based on MJA's Lack of Good Faith Performance.

MJA argues that the Counterclaim seeks to impermissibly create rights and duties not contemplated by the contract or the contractual relationship, and that it cannot be in breach of the implied covenant for enforcing a contractual right. Even if this argument did not again seek to

---

[3] For example, MJA alleges that BGE cannot maintain a breach of contract claim due to "BGE's utter failure to respond to the Notice of Termination" Motion at 12. Following BGE's well-pled facts, MJA's demands were improper and no response in the demanded form was required.

credit MJA's facts above the operative facts in the Counterclaim, both conclusions would still be incorrect. Again, MJA's own purported authority fails to support its argument.

The implied covenant of good faith and fair dealing provides that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. …[T]he purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." *Janz Corp. v. Philips N. Am. LLC*, No. CV 23-11025-FDS, 2024 WL 555673, at *3 (D. Mass. Feb. 12, 2024) (internal citations omitted) (quoting *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471 (1991) and *Uno Rests., Inc. v. Bos. Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004)).

Even if MJA was within its contractual rights to terminate the Agreement, which the Counterclaim expressly contradicts, "[w]here one party has the right to exercise discretion under the contract, it is bad faith to use that discretion to recapture opportunities foregone on contracting as determined by the other party's reasonable expectations." *Piantes v. Pepperidge Farm, Inc.*, 875 F. Supp. 929, 938 (D. Mass. 1995) (internal citations omitted). *See also Janz Corp.*, 2024 WL 555673, at *4. This is precisely the circumstance alleged in the Counterclaim.

According to facts as alleged, MJA sought to create a pretextual claim of a specific material breach which would allow it to terminate the Agreement while avoiding the contractual provision entitling BGE to retain all deposits paid if MJA terminates for any other reason. As discussed further in Section II(B), *infra*, BGE has provided context to support this allegation and bad-faith motive such that it is entitled to pursue further evidence of its claims. Specifically, BGE has pled that it did not materially breach the Agreement, MJA did materially breach the Agreement, and

MJA improperly terminated the Agreement and demand a return of its deposits. As such, BGE has set forth a claim that MJA has deprived it of a bargained-for benefit of the Agreement in bad faith.[4]

MJA cites *Piantes* in support of its claim that "MJA's exercise of its express, unilateral power to extend the closing date … and to terminate the agreement …once it learned of BGE's falsehoods" negates a claim for breach of the implied covenant. Motion at 14.[5] First and foremost, in deciding a motion for summary judgment, the *Piantes* court expressly weighed the parties' respective evidence to assess whether plaintiff had sufficiently supported his claim for breach of the implied covenant.[6] *Piantes*, 875 F. Supp. at 938. The same cannot be done here. Next, in dismissing the implied covenant claim, the *Piantes* court went on to explain that the plaintiff had not presented "any evidence that [defendants'] actions were motivated by a desire to deprive [plaintiff] of what he reasonably could have expected to receive under the contract, namely continued work on his route, or the contractually determined compensation which he was offered." *Id*. There, while defendant terminated the contract without reason, as it was permitted to do, it compensated plaintiff in accordance with the appropriate termination provision and thus did not deprive plaintiff of any expected benefit. *Id*. Here, BGE had a reasonable expectation and entitlement to retain all deposits should MJA terminate the Agreement other than for the reasons stated in Section 10.3, which did not apply. Rather, MJA intentionally deprived BGE of that benefit

---

[4] Though MJA attempts to undermine the evidentiary basis of the facts as asserted, BGE's allegations set forth the requisite information necessary to advance its claims. *See e.g. O'Hara*, 370 F. Supp. 3d at 212 (at pleading stage, court "neither weighs the evidence nor rules on the merits because the issue is not whether plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims.").

[5] Again, MJA makes disputed factual assertions that directly contradict the facts pled in the Counterclaims. BGE disputes the entirety of this conclusory and counter-factual argument, which should not be credited in this Motion.

[6] The same is true of each of the other cases relied upon by MJA in this regard. *See Dunkin' Donuts Inc. v. Gav-Stra Donuts, Inc.*, 139 F. Supp. 2d 147, 156 (D. Mass. 2001) (no evidence of bad faith after summary judgment); *Uno Rests, Inc.*, 441 Mass. 376 (analyzing evidence presented at trial to determine breach of implied covenant); *Dunkin' Donuts Inc. v. Panagakos*, 5 F. Supp. 2d 57, 64 (D. Mass. 1998) (no evidence of motivation and bad faith at summary judgment). Each of these cases expressly relied upon the consideration of record evidence after the completion of discovery or trial to make the requisite findings.

in bad faith by seeking to orchestrate a non-material breach. MJA terminated the Agreement and demanded the return of deposits it was not entitled to. This is the very picture of conduct which violates the implied covenant, and BGE requests that the Court permit it to further substantiate this claim through discovery.

**B.   The Counterclaim Sets Forth Facts Which Would Satisfy the Heightened Pleading Standard Applicable to Fraud Claims.**

MJA concedes that the implied covenant of good faith and fair dealing may also be breached through the exercise of a contractual right if a party does so in a manner that invokes fraud, deceit, or misrepresentation. Motion at 13. In addition to the intentional deprivation of expected benefits under the Agreement, BGE also supports its claim for breach of the implied covenant with allegations of misrepresentation or deceit which satisfy the Rule 9(b) pleading standard. "This circuit has interpreted Rule 9(b) to require 'specification of the time, place, and content of an alleged false representation'" *Lindner Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 57 (D. Mass. 1995).

As described, *supra*, MJA engaged in a scheme to extract itself from its obligation to purchase the Equipment due to apparent inability to finance the same, and did so in a manner calculated to deprive BGE of its right to retain the deposits provided as compensation for MJA's repeated failure to close the sale. In its pleadings, BGE describes text message discussions between Keverian and Ellis in March and April of 2023 regarding BGE's concerns about MJA's ability to fulfil proposed contractual obligations, and MJA's representations that it could. Counter. ¶ 4-8.

After materially breaching the Agreement by failing to close or extend the closing prior to September 18, 2023, MJA was required to either appeal to BGE to proceed with the Agreement and submit another deposit (which would become refundable if BGE materially breached the Agreement under certain terms) or accept the loss of the deposit and the Agreement. MJA chose

15

the latter, repeatedly representing its intent to close on the sale, dissuading BGE from enforcing its own right to terminate the Agreement based on MJA's material breach. MJA accused BGE of a material breach, which BGE remedied despite disagreement that purported cosmetic imperfections constituted a breach. This caused MJA to remain bound to purchase the Equipment under the Agreement or lose all deposits (as expressly communicated to MJA's counsel).

MJA alleged a subsequent purported material breach in December 2023. BGE again disagreed that the Equipment breached any material term of the Agreement but agreed to invoke the curative remedies provided for in the Agreement. MJA refused, wrongfully terminating the Agreement despite its provisions to the contrary, and demanded a return of all deposits.

BGE need not prove the allegations made in the Counterclaim for the purposes of this Motion. Discovery and evidence obtained in this litigation can and must assist BGE in shedding conclusive light on the apparent motivation that can plausibly be implied by the facts as alleged. BGE has "specif[ied] the time, place, and content of the false representations that [it] received and upon which [it] relied" *Rick v. Profit Mgmt. Assocs.*, No. CV 15-11171-JGD, 2018 WL 5114168, at *4 (D. Mass. Oct. 19, 2018) (quoting *OrbusNeich Med. Co., Ltd., BVI v. Bos. Sci. Corp.*, 694 F. Supp. 2d 106, 118 (D. Mass. 2010)).

## III.   THE FACTS AS ALLEGED IN THE COUNTERCLAIM PLAUSIBLY STATE A CLAIM FOR VIOLATIONS OF CHAPTER 93A.

MJA argues that the Counterclaim fails to allege conduct that falls within the penumbra of Chapter 93A, and that BGE's allegations that make up its claim are mere speculation. It also argues that BGE's claim under Chapter 93A sounds in fraud or misrepresentation, and does not meet the heightened pleading standard advanced under Rule 9(b). BGE disagrees on all counts.

### A. BGE's Chapter 93A Claim is Not Subject to Heightened Pleading Standards.

As an initial matter, BGE disputes that the heightened pleading standard under Rule 9(b) is applicable to its 93A claim. While Rule 9(b) may apply to claims that do not expressly allege fraud, the implication of fraud must be "the lynchpin of the 93A charge, triggering the requirements of Rule 9(b)." *Timmins Software Corp. v. EMC Corp.*, 502 F. Supp. 3d 595, 605 (D. Mass. 2020). While BGE certainly alleges that MJA misrepresented its intentions and acted in a deceptive and bad faith manner, its 93A claim is not <u>dependent</u> on a finding of fraudulent conduct. *See id.* ("Plaintiff has included other allegations—[examples]—that could stand on their own to support the 93A claim without the allegation of a misrepresentation. Therefore, fraud does not serve as the lynchpin to the 93A claim and thus Rule 9(b) is not invoked.").

MJA's conduct as alleged would (and does) state a claim under Chapter 93A even absent the fraud-based character of certain actions. For example, BGE plausibly alleges that MJA invoked a contractual provision in bad faith for its own gain, at the expense of BGE's expected contractual benefit. As discussed below, this allegation alone constitutes a Chapter 93A claim.[7]

### B. The Facts as Pled Plausibly Support a Claim Under Chapter 93A, and MJA's Contrary Assertions of Fact Are Impermissible at This Stage.

As is the case throughout its Motion, MJA's argument that BGE has failed to plead facts sufficient to support a claim under 93A largely relies upon inapposite case law which analyzes factual allegations against the sufficiency of evidentiary proof after discovery. *See e.g. Skyview Fin. Co., LLC v. Kearsarge Trading, LLC*, 616 F. Supp. 3d 152, 157 (D. Mass. 2022) (summary judgment after 93A claimant "has not unearthed a single email or cited any deposition testimony

---

[7] Although BGE does not believe that the heightened pleading standard is applicable to its claim, it has nevertheless pled sufficient factual information to put MJA on notice of the subject of the allegations concerning fraud, deceit, and misrepresentation, as is required under Rule 9(b). *See Lindner Dividend Fund, Inc.*, 880 F. Supp. at 56 ("purpose of Rule 9 is to provide notice to the defendant of the grounds on which the plaintiff's fraud claim rests"). BGE has specifically identified the persons making misrepresentations, when and where those misrepresentations were made, and the content of the representations. *See* Section II(B), *supra*.

that corroborates its argument"); *Tagliente v. Himmer*, 949 F.2d 1, 7 (1st Cir. 1991) (analyzing summary judgment record evidence to determine whether 93A standard has been met).

BGE need not prove at this stage that MJA's actions amount to unfair and deceptive practices under 93A; it must only allege a scope of conduct that falls within the statute, and facts which plausibly set forth MJA's conduct in that scope. *Baker v. Goldman, Sachs & Co.*, 771 F.3d 37, 49 (1st Cir. 2014) (whether conduct generally falls under 93A is matter of law, but "whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact") (quoting *Arthur D. Little, Inc. v. Dooyang Corp.*, 147 F.3d 47, 54 (1st Cir.1998)).

Drawing all inferences in its favor, BGE easily satisfies this requirement. In fact, the Court need look only to BGE's claim for breach of the implied covenant of good faith and fair dealing to determine that BGE has stated a claim which falls within the 93A penumbra. Where "plaintiffs' allegations support a claim for breach of the implied covenant of good faith and fair dealing, they have also sufficiently alleged 'unfair' or 'deceptive' conduct[.]" *Speakman v. Allmerica Fin. Life Ins.*, 367 F. Supp. 2d 122, 140 (D. Mass. 2005); *see also Janz Corp.*, 2024 WL 555673, at *7 (facts supporting breach of implied covenant claim inherently implicate 93A).

In its Counterclaim, BGE alleges that MJA entered into an agreement that it knew or should have known it could not fulfill, breached the Agreement, misrepresented its good-faith effort and intent to proceed with the Agreement causing BGE not to invoke its own contractual rights, and finally, attempted to invoke the terms of the Agreement in bad faith by creating an allegation of material breach against BGE in order to gain a benefit of the Agreement that it was not entitled to (termination and return of the deposits) to BGE's detriment. Each of the foregoing facts is based on events, communications, and reasonable inferences that must be credited at this stage. The factual circumstances pled are facially distinguishable from those relied upon by MJA in claiming

that BGE has not pled conduct sufficient to invoke Chapter 93A. *See e.g. Equip. & Sys. For Indus., Inc. v. Northmeadows Const. Co.*, 59 Mass. App. Ct. 931, 932 (2003) (93A claimant pled only that party agreed to perform and refused to do so, no deceptive scheme related to party). BGE is confident that discovery in this matter will lend additional factual support to this claim.

MJA attempts to interject its own version of the facts into the analysis, in effect asking the Court to consider its allegations in the Complaint in the place of those contained in BGE's Counterclaim. The plausible facts in the Counterclaim must be credited. *See e.g. Ocasio-Hernandez*, 640 F.3d at 17. The facts as alleged exceed that standard.

## IV.   MJA'S REQUEST TO STRIKE IS UNSUPPORTED AND MUST BE DENIED.

Motions to strike under Fed. R. Civ. P.  12(f) are disfavored, and courts do not view motions to strike affirmative defenses for legal insufficiency favorably. *Bio-Vita, Ltd. v. Rausch*, 759 F. Supp. 33, 39 (D. Mass. 1991) ("pleadings should be treated liberally, and that a party should have the opportunity to support his contentions at trial."). "In assessing whether a motion to strike should be granted, the Court must bear in mind that such motions are rarely granted absent a showing of prejudice to the moving party." *Leader v. Harvard Univ. Bd. of Overseers*, No. CV 16-10254-DJC, 2017 WL 1064160, at *1 (D. Mass. Mar. 17, 2017). The standard for granting a motion to strike under Rule 12(f) is exacting. *See e.g. U.S. S.E.C. v. Nothern*, 400 F. Supp. 2d 362, 364 (D. Mass. 2005) ("Motions to strike a defense as insufficient are not favored by the federal courts because of their somewhat dilatory and often harassing character. Thus, even when technically appropriate and well-founded, Rule 12(f) motions are not granted in the absence of a showing of prejudice to the moving party."). MJA does not allege, must less support, that any prejudice shall befall it unless the conditional jury demand and implications of contractual waiver are struck from the pleadings.

**A.  BGE is Permitted to Request a Jury to Preserve its Rights.**

MJA requests that this Court strike the jury demand contained in BGE's Counterclaim. The relevant language reads as follows: "Defendant/Plaintiff-in-Counterclaim demands a trial by jury on all claims so triable." Counter. at 16. BGE acknowledges that the Agreement contains a waiver of the right to a jury trial for claims arising thereunder. BGE has not demanded a trial by jury on *all* claims in this action, but "on all claims so triable." *Id*. Should the Agreement and/or jury waiver clause remain unchallenged throughout this litigation, then no claim presently asserted would fall under this request. BGE has included a standard jury demand to preserve any and all rights thereto due to the unpredictability of litigation, particularly that which has not yet undergone any discovery investigation. Given the exceptionally high bar that must be met for a pleading to be struck, BGE contends that MJA has not satisfied its burden to substantiate that request.

**B.  MJA Has Not Stated Any Reason to Strike References to or Implications of Waiver.**

Similarly, MJA has entirely failed to support its conclusory request the Court strike any claim or defense of waiver based on its unilateral contention that it is "deficient as a pure matter of law." Motion at 18. MJA does not claim to suffer *any* prejudice, nor provide any other meaningful reason. BGE properly asserted an affirmative defense of waiver in response to MJA's claims. MJA seems to grossly misplace the burden upon BGE to *prove* its affirmative defenses in its Answer or have them stricken entirely. This is simply against the weight of the law. *See e.g. Bio-Vita, Ltd.*, 759 F. Supp. at 39. The same is true of MJA's assertion that the Court should strike any reference to or implication of waiver in the Counterclaim. To the extent MJA anticipates its waiver of certain contractual provisions will be at issue in this case, it is free to challenge supporting facts or evidence at the appropriate time. It would be premature and extremely prejudicial to preclude the possibility of a legitimate legal theory (not a cause of action) because MJA contends that it has not been definitively proven in an initial pleading.

## CONCLUSION

For the foregoing reasons, MJA's Motion to Dismiss should be DENIED. In the alternative, BGE should be granted leave to amend the Counterclaim.

Respectfully Submitted,

BATTLE GREEN EQUIPMENT LLC,

By its attorneys,

*/s/ Lauren M. Koslowsky*
Kenneth A. Sherman, BBO No. 569293
ksherman@princelobel.com
Lauren M. Koslowsky, BBO No. 705541
lkoslowsky@princelobel.com
PRINCE LOBEL TYE, LLP
One International Place, Suite 3700
Boston, MA  02110
t. (617) 456-8000
f. (617) 456-8100

Dated: April 4, 2024

## CERTIFICATE OF SERVICE

I, Lauren M. Koslowsky, hereby certify that the foregoing document will be served upon counsel of record through the CM/ECF system for registered participants and by first-class mail to any non-registered participants.

*/s/ Lauren M. Koslowsky*
Lauren M. Koslowsky