# EXHIBIT A

THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MJA HOLDINGS LLC,<br><br>    Plaintiff,<br><br>v.<br><br>BATTLE GREEN EQUIPMENT LLC,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)   Docket No. 24-CV-10181-(WGY)<br>)<br>)<br>)<br>)<br>)<br>) |

# DEFENDANT'S [PROPOSED] AMENDED ANSWER TO PLAINTIFF'S COMPLAINT AND BATTLE GREEN EQUIPMENT LLC'S COUNTERCLAIMS

Defendant/Plaintiff-in-Counterclaim, Battle Green Equipment LLC ("BGE"), hereby submits the following Answer the Complaint filed by Plaintiff/Defendant-in-Counterclaim, MJA Holdings LLC ("MJA"). In so answering, BGE states as follows:

## PARTIES

1. BGE is without knowledge or information sufficient to admit or deny the allegations contained in Paragraph 1 of the Complaint.

2. BGE admits the allegations contained in Paragraph 2 of the Complaint.

## JURISDICTION AND VENUE

3. Paragraph 3 of the Complaint contains and sets forth a legal conclusion for which no response is required.

4. Paragraph 4 of the Complaint contains and sets forth a legal conclusion for which no response is required.

1

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

5. Paragraph 5 of the Complaint contains and sets forth legal conclusions for which no response is required. To the extent any response is required, BGE admits that MJA contracted with BGE to purchase certain HVAC equipment for a sum exceeding $2,000,000.00, and denies all remaining allegations contained in Paragraph 5 of the Complaint.

6. BGE admits that it entered the Contract with MJA on August 18, 2023. The Contract is a document which speaks for itself, and BGE denies the allegations in in this Paragraph to the extent they are inconsistent with the Contract. BGE admits that MJA paid an initial deposit of $212,757.94 on or about August 20, 2023.

7. Paragraph 7 of the Complaint refers to the Contract, which speaks for itself. BGE denies the allegations in this Paragraph to the extent they are inconsistent with the Contract. BGE denies all remaining allegations and characterizations contained in Paragraph 7 of the Complaint.

8. Paragraph 8 of the Complaint refers to the Contract, which speaks for itself. BGE denies the allegations in this Paragraph to the extent they are inconsistent with the Contract.

9. Paragraph 9 of the Complaint refers to the Contract, which speaks for itself. BGE denies the allegations in this Paragraph to the extent they are inconsistent with the Contract.

10. Paragraph 10 of the Complaint refers to the Contract, which speaks for itself. BGE denies the allegations in this Paragraph to the extent they are inconsistent with the Contract.

11. BGE admits that the parties extended the initial closing date, despite MJA failing to request an extension of time to close in the first instance until two days later, on three occasions, on or about September 20, 2023, October 17, 2023, and November 15, 2023. BGE admits that the final agreed-upon closing date was December 19, 2023, and that MJA provided deposits in

connection with each request to extend the closing date pursuant to the Contract. BGE denies all remaining allegations and characterizations contained in Paragraph 11 of the Complaint.

12. Paragraph 12 of the Complaint refers to written documents, which speak for themselves. BGE denies the allegations in this Paragraph to the extent they are inconsistent with the written documents. BGE denies all remaining allegations and characterizations contained in Paragraph 12 of the Complaint, including the truth and accuracy of the referenced written conclusions.

13. Paragraph 13 of the Complaint refers to the Contract, which speaks for itself. BGE denies the allegations in this Paragraph to the extent they are inconsistent with the Contract. BGE denies all remaining allegations contained in Paragraph 13 of the Complaint, including that MJA acted in accordance with the referenced contractual provision.

14. Paragraph 14 of the Complaint refers to a written document, which speaks for itself. BGE denies the allegations in this Paragraph to the extent they are inconsistent with the written document. BGE denies all remaining allegations and characterizations contained in Paragraph 14 of the Complaint, including the truth and accuracy of the referenced written conclusions.

15. BGE is without knowledge or information sufficient to admit or deny the allegations as to discussions between MJA and a third party in Paragraph 15. BGE denies all remaining allegations and characterizations contained in Paragraph 15 of the Complaint.

16. Paragraph 16 of the Complaint refers to a written document which speaks for itself. BGE denies the allegations in Paragraph 16 to the extent they are inconsistent with the written document. To the extent a further response is required, BGE denies the truth and accuracy of the allegations referenced in the underlying written document.

17. Paragraph 17 of the Complaint refers to a written document which speaks for itself. BGE denies the allegations to the extent they are inconsistent with the written document. The remaining allegations in Paragraph 17 set forth legal conclusions for which no response is required. To the extent any answer is required, BGE admits that MJA sent the referenced letter and denies all other allegations contained in Paragraph 17 of the Complaint.

18. BGE admits that it has not returned any deposit to MJA, but denies the allegations contained in Paragraph 18 of the Complaint to the extent they imply that MJA is entitled to a return of any deposit. BGE denies the remaining allegations contained in Paragraph 18 of the Complaint.

## COUNT I
### (Breach of Contract)

19. BGE incorporates by reference its responses to each of the previous Paragraphs of the Complaint as if set forth fully herein.

20. Paragraph 20 of the Complaint sets forth legal conclusions to which no response is required. To the extent any response is required, BGE denies the allegations in Paragraph 20.

21. Paragraph 21 of the Complaint refers to the Contract, which speaks for itself. BGE denies the allegations in Paragraph 21 to the extent they are inconsistent with the Contract.

22. To the extent Paragraph 22 of the Complaint sets forth legal conclusions, no response is required. BGE denies all remaining allegations in Paragraph 22 of the Complaint.

23. BGE admits that MJA arranged an inspection of the Equipment. BGE denies all other allegations contained in Paragraph 23 of the Complaint.

24. Paragraph 24 of the Complaint refers to the Contract, which speaks for itself. BGE denies the allegation in Paragraph 24 to the extent it is inconsistent with the Contract.

25. BGE is without knowledge or information sufficient to admit or deny the allegations as to discussions between MJA and a third party in Paragraph 25. To the extent any response is required, BGE denies the allegations contained in Paragraph 25 in the Complaint.

26. BGE denies the allegation in Paragraph 26 to the extent it implies that BGE breached the Contract and/or was required to cure said breach within 5 days. To the extent a further response is required, BGE denies the allegation contained in Paragraph 26 of the Complaint.

27. Paragraph 27 of the Complaint contains and sets forth legal conclusions to which no response is required. To the extent any response is required, BGE denies the allegations contained in Paragraph 27 of the Complaint.

28. Paragraph 28 of the Complaint contains and sets forth legal conclusions to which no response is required. To the extent any response is required, BGE denies the allegations contained in Paragraph 28 of the Complaint.

29. BGE denies the allegations contained in Paragraph 29 of the Complaint.

30. Paragraph 30 of the Complaint contains and sets forth legal conclusions to which no response is required. To the extent any response is required, BGE denies the allegations contained in Paragraph 30 of the Complaint.

31. Paragraph 31 of the Complaint contains and sets forth legal conclusions to which no response is required. To the extent any response is required, BGE denies the allegations contained in Paragraph 31 of the Complaint, including MJA's demand for relief.

## COUNT II
### (M.G.L. c. 93A § 11)

32. BGE incorporates by reference its responses to each of the previous Paragraphs of the Complaint as if set forth fully herein.

33. BGE admits the allegations contained in Paragraph 33 of the Complaint.

34. BGE denies the allegations contained in Paragraph 34 of the Complaint.

35. BGE denies the allegations contained in Paragraph 35 of the Complaint.

36. BGE denies the allegations contained in Paragraph 36 of the Complaint.

37. Paragraph 37 of the Complaint contains and sets forth legal conclusions to which no response is required. To the extent any response is required, BGE denies the allegations contained in Paragraph 37 of the Complaint.

38. Paragraph 38 of the Complaint contains and sets forth legal conclusions to which no response is required. To the extent any response is required, BGE denies the allegations contained in Paragraph 38 of the Complaint.

39. Paragraph 39 of the Complaint contains and sets forth legal conclusions to which no response is required. To the extent any response is required, BGE denies the allegations contained in Paragraph 39 of the Complaint, including MJA's demand for relief.

## COUNT III
### (Misrepresentation)

40. BGE incorporates by reference its responses to each of the previous Paragraphs of the Complaint as if set forth fully herein.

41. BGE denies the allegations contained in Paragraph 41 of the Complaint.

42. BGE denies the allegations contained in Paragraph 42 of the Complaint.

43. BGE denies the allegations contained in Paragraph 43 of the Complaint.

44. Paragraph 44 of the Complaint contains and sets forth legal conclusions to which no response is required. To the extent any response is required, BGE denies the allegations contained in Paragraph 44 of the Complaint.

## AFFIRMATIVE DEFENSES

BGE asserts the following affirmative defenses in response to the counts contained in the Complaint, without prejudice to the denials in its answer to Plaintiff's claims and without admitting any allegations not otherwise admitted. By raising the following affirmative defenses, BGE does not assume the burden of proof for any claims where such burden is otherwise on the Plaintiff.

### First Affirmative Defense

Plaintiff's claims are barred on the grounds that the Complaint, wholly or in part, fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

Plaintiff's claims are barred, wholly or in part, on the grounds that BGE's conduct was at all times justified and lawful.

### Third Affirmative Defense

Plaintiff's claims are barred, wholly or in part, on the grounds that it did not suffer any legally cognizable harm caused by BGE's conduct as a result of the allegations in the Complaint.

### Fourth Affirmative Defense

Plaintiff's claims against BGE are barred because its damages, if any, were not caused by BGE.

### Fifth Affirmative Defense

Plaintiff's claims are barred because they are frivolous, brought in bad faith and/or brought for an improper purpose.

### Sixth Affirmative Defense

Plaintiff's claim is barred, in whole or in part, as a result of the acts and/or omissions of Plaintiff.

**Seventh Affirmative Defense**

Plaintiff's claims are barred, wholly or in part, under the doctrines of unclean hands, laches, waiver and/or estoppel.

**Eighth Affirmative Defense**

Plaintiff's claims are barred by Plaintiff's own breaches of contract.

**Ninth Affirmative Defense**

Plaintiff is not entitled to any relief because they materially breached their obligations under the Contract between the parties.

**Tenth Affirmative Defense**

Plaintiff failed to mitigate any and all purported losses and/or damages claimed, as required by law.

**Eleventh Affirmative Defense**

Plaintiff's claims are barred because Plaintiff failed to substantially perform the Contract in good faith.

**Twelfth Affirmative Defense**

Plaintiff's claims are barred, in whole or in part, by its breach of the implied covenant of good faith and fair dealing.

**RESERVATION OF RIGHTS TO ASSERT ADDITIONAL DEFENSES**

BGE has not knowingly or intentionally waived any applicable defenses, and it reserves the right to assert and rely upon other applicable defenses that may become available or apparent during discovery in this matter. BGE reserves the right to amend or seek to amend its answer and/or affirmative defenses.

## COUNTERCLAIMS

Defendant/Plaintiff-in-Counterclaim, Battle Green Equipment LLC ("BGE" or "Counterclaim Plaintiff"), hereby asserts the following counterclaims against Plaintiff/Defendant-in-Counterclaim, MJA Holdings, LLC ("MJA" or "Counterclaim Defendant"), for breach of contract, breach of breach of the implied covenant of good faith and fair dealing, and for violation of M.G.L. c. 93A § 11.

## PARTIES

1. BGE is a foreign limited liability company organized and existing under the laws of the state of Delaware, with a principal place of business at P.O. Box 11519, 1766 West 46th Avenue, Denver, CO 80211.

2. Upon information and belief, MJA is a Massachusetts limited liability company organized and existing under the laws of Massachusetts with a principal place of business at 25 Bancroft Street, Watertown, MA 02051.

## FACTUAL ALLEGATIONS

3. Despite the Complaint's allegations otherwise, this matter actually involves MJA's bad faith efforts to avoid responsibility for failing to consummate an equipment sale transaction for the pretextual reasons littered throughout the Complaint.

4. In or about March 2023, Jack N. Keverian ("Keverian"), MJA's manager, and David W. Ellis ("Ellis"), one of BGE's managers, entered into preliminary discussions concerning MJA purchasing certain unused Dehumidifying Air Handlers Units ("AHUs") and Trane Chillers ("Chillers") (together, the "HVAC Equipment"), which BGE previously purchased for a construction project it was no longer planning to construct.

9

5. The discussions between Keverian and Ellis regarding MJA's purchase of BGE's new, unused HVAC Equipment continued through April 2023, primarily through text messages.

6. Early on in these text message discussions, BGE began to suspect that MJA may not be as well-capitalized as it represented itself to be, and was concerned about MJA's financial ability to purchase the HVAC Equipment as discussed.

7. BGE requested that MJA provide proof of sufficient funds to demonstrate that MJA could move forward with the contemplated closing for the HVAC Equipment.

8. In response, MJA sent BGE a screenshot depicting a check written to a cryptocurrency holding company purportedly owned by Keverian, which Keverian would ostensibly use to fund the purchase of the HVAC Equipment.

9. On April 26, 2023, BGE provided MJA with an e-mail containing links to an equipment list with pricing, together with warranty options for the Chillers for MJA to choose from.

10. On May 8, 2023, BGE provided MJA with the first draft of what would ultimately become the August 18, 2023 Equipment Purchase Agreement referenced in the Complaint and attached thereto as Exhibit A (the "Agreement").

11. MJA delayed providing any substantive response to BGE's draft of the Agreement for all of May, all of June, and nearly all of July 2023.

12. For days and weeks at a time, MJA failed to substantively respond to BGE about the status of its review of the draft of the Agreement, which MJA first received on May 8, 2023.

13. As BGE feared, MJA also advised BGE that it was no longer planning to purchase the HVAC Equipment using the funds tendered to Keverian's cryptocurrency holding company, as MJA originally represented.

14. Instead, MJA alluded to various, vague sources of funding (e.g. an international investor and "financing") when BGE inquired about MJA's ability to close on the sale of the HVAC Equipment as contemplated by the Agreement.

15. Nevertheless, the parties entered into the Agreement on August 18, 2023, pursuant to which MJA agreed to purchase twenty (20) AHUs at a total sale price of $1,421,243.40 and two (2) Chillers at a total sale price of $706,366.00 for a total Contract value of $2,127,579.40.

16. Pursuant to the Agreement, the closing was scheduled to take place on September 18, 2023.

17. As required by the Agreement, MJA deposited a sum of $212,757.94 with BGE and agreed to expeditiously conduct an inspection of the HVAC Equipment in order to timely close the sale.

18. MJA failed to conduct an inspection prior to the contractually agreed-upon September 18, 2023 closing date, and failed to secure an extension of time to close prior to the expiration of the closing date.

19. MJA's failure to close by September 18, 2023 was a material breach of the Agreement.

20. Nevertheless, the parties mutually agreed to extend the closing date on subsequent occasions to allow *inter alia* MJA to conduct the inspections it requested prior to closing.

21. MJA conducted the first of their cursory, cosmetic inspections on September 23 and 29, 2023 and produced a report dated October 2, 2023 that identified purely cosmetic issues with a small portion of the HVAC Equipment, which according to MJA's inspector's own report, merely required cleaning, rust removal, and to have certain of the outdoor-rated equipment moved indoors until closing.

22. Despite these concerns being identified in only a small portion of the HVAC Equipment as a whole, and despite BGE having deductive cure rights available to it, out of good faith, BGE agreed to extend the closing date provided for in the Agreement and to cause these cosmetic issues to be cured, even though BGE was in material compliance with the Agreement and could have terminated the Agreement and retained the deposits on-hand as of the date of the October 2, 2023 inspection report.

23. BGE caused the cosmetic repairs to be performed to the identified HVAC Equipment following receipt of the October 2, 2023 inspection report and arranged for bifurcated closing dates as follows: (i) November 22, 2023 for MJA to purchase the Chillers and nine (9) of the twenty (20) AHUs whose physical integrity MJA did not question, and (ii) November 29, 2023 to allow for MJA to purchase the balance of the AHUs following MJA's final inspection.

24. On November 17, 2023, prior to arranging these extended, bifurcated closing dates, BGE, through counsel, informed MJA, through counsel, that all deposits on-hand with BGE were deemed non-refundable because MJA was in breach of Section 10.2(B) of Agreement, and that if the parties continued to extend the closing dates, BGE was within its rights under the Agreement to treat all deposits made by MJA as non-refundable.

25. In response, MJA's counsel did not object and agreed to convey BGE's stated position to MJA.

26. On December 5, 2023, MJA produced an invoice from its inspector, which MJA held out as an inspection report identifying further defects to a small portion of eleven of the twenty AHUs, primarily involving the dual-fans located within the housing of the AHUs.

27. According to MJA's inspector's purported report, all of the fans in those eleven AHUs needed to be replaced.

28. In response, BGE secured an estimate of the cost to replace both fans in all eleven identified AHUs from its AHU supplier at approximately $66,000.00.

29. The total allegedly defective portion of the HVAC Equipment amounted to an immaterial sum of less than four percent (4%) of the total purchase price for the HVAC Equipment.

30. Assuming *arguendo* that all twenty-two fans contained within the AHUs were non-operational thus rendering all eleven of the twenty AHUs non-operational, 65% of the HVAC Equipment was in perfect shape and ready to be closed upon, as MJA had agreed to in November 2023.

31. Pursuant to the Agreement, BGE had the option to cure this purported defect in four percent (4%) of the HVAC Equipment by providing MJA with a credit at closing in the amount it would cost to replace both fans in all eleven AHUs.

32. On December 12, 2023, MJA wrote to BGE demanding that it cure the purported defects in the four percent (4%) of the HVAC Equipment identified by MJA's inspector, and that it cure another alleged non-material breach of the Agreement: the inability to offer warranties to MJA for the HVAC Equipment.

33. BGE informed MJA that it intended to cure the defects allegedly present in four percent (4%) of the HVAC Equipment identified by MJA's inspector by offering MJA a credit at closing, in accordance with the Agreement, and that BGE could supply MJA with warranties for the HVAC Equipment sufficient to ensure that MJA would not incur future repair and replacement costs for the HVAC Equipment, even though neither alleged breach was material in any respect.

34. Not willing to accept BGE's offers to cure such alleged non-material breaches of the Agreement, MJA terminated it.

35. MJA utilized unfair and deceptive business practices designed to extract itself from a contractual obligation that it could not, or would not, fulfil, while forcing BGE to bear all costs and consequences associated with this failure.

36. For example, MJA attempted to avoid its obligations by complaining that the HVAC Equipment was being stored outdoors, leading to non-conforming equipment. In good faith, as required under the Agreement, BGE cured MJA's purported concern by undertaking the time and expense of renting a substantial storage facility to house the HVAC Equipment for MJA until the sale was completed.

37. The HVAC Equipment requires an exceedingly large storage space due to the size and weight of the equipment and BGE continues to incur additional storage expenses to date.

38. In fact, MJA chose not to fulfil its obligation to close upon the sale despite BGE's compliance with its demands. As a result of this failure and MJA's misrepresented intentions, BGE continues to incur the cost of storing the HVAC Equipment on a monthly basis.

39. BGE incurred labor and service costs associated with remedying MJA's purported concerns about the HVAC Equipment (i.e. deep cleaning, moving, rust removal, etc.) which MJA unfairly and deceptively insisted would prevent it from effectuating the sale. Upon remediation however, MJA manufactured new bases for termination.

40. As a result of MJA's scheme to extract itself from the Agreement at BGE's expense, BGE has been left with HVAC Equipment that has, and will continue to, depreciate in value. The Agreement provided for inspections and closings to be conducted within certain time periods due in large part to the depreciation in value of technological or mechanical devices in the marketplace. BGE was willing to allow MJA additional time to meet these deadlines due to its repeated representations that it intended to close on the sale in good faith.

41. The HVAC Equipment is now a model year older than it was when MJA promised to purchase it. The HVAC Equipment will suffer a corresponding value decrease from what BGE was able to market the equipment for at the time that MJA represented, and continued to affirm, that it intended to purchase the HVAC Equipment.

## COUNT I
### (Breach of Contract)

35.42. BGE incorporates by reference each of the allegations contained in the preceding paragraphs as if fully set forth herein.

36.43. The Agreement is a valid and enforceable contract between MJA and BGE.

37.44. BGE performed each of its material obligations under the Agreement.

38.45. MJA materially breached its obligations under the Agreement by, among other things, ~~failing to extend the initial closing date provided for under the Agreement before it expired; failing to close by the outside deadline of October 31, 2023 provided for under the Agreement;~~ identifying non-material breaches of the Agreement as obstacles to closing, and refusing to allow BGE to cure any such alleged non-material breaches of the Agreement prior to MJA's wrongful termination of the Agreement.

39.46. As a result of MJA's breaches of contract, BGE has suffered harm in an amount to be determined at trial, but in no event less than $2,061,579.40, plus interest and attorney's fees.

## COUNT II
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

40.47. BGE incorporates by reference each of the allegations contained in the preceding paragraphs as if fully set forth herein.

15

~~41.~~48.  The Agreement is a binding contract which is subject to an implied covenant of good faith and fair dealing, requiring MJA to remain faithful to the intended and agreed-upon expectations of the parties, and to refrain from the improper conduct as alleged herein.

~~42.~~49.  MJA's conduct described herein constitutes a breach of the covenant of good faith and fair dealing implied in each of the agreements insofar as MJA's actions in extending the closing date by identifying purported non-material breaches was undertaken solely to extricate MJA from the Agreement even though BGE materially complied at all times with the Agreement; MJA was required to cite purported non-material breaches of the Agreement in order to present a bad-faith claim that it is entitled to retain all deposits that would be forfeited if MJA otherwise terminated the Agreement.

~~43.~~50.  As a result of MJA's breaches, Counterclaim Plaintiff has suffered damages in an amount to be determined at trial, plus interest and attorney's fees.

## COUNT III
### (Violation of G. L. c. 93A § 11)

~~44.~~51.  BGE incorporates by reference each of the allegations contained in the preceding paragraphs as if fully set forth herein.

~~45.~~52.  MJA engages in the conduct of trade or commerce and contracted with BGE, an entity that also engages in the conduct of trade or commerce.

~~46.~~53.  MJA violated Chapter 93A by, among other things, knowingly and willfully engaging in unfair and deceptive conduct in its dealings with the BGE by inducing BGE to continue to extend the closing dates for the HVAC Equipment until such time that MJA had created a record of purported and-overblown non-material breaches of the Agreement that it intended to rely upon to demand return of its deposits, which it would have otherwise forfeited had MJA

simply terminated the Agreement after MJA determined that it would never close on the HVAC Equipment.

47.54.  As a result of MJA's bad faith and its unfair and deceptive acts and practices, BGE has suffered significant monetary loss.

55.  The losses incurred by BGE as a result of MJA's use of unfair and deceptive business practices include, without limitation, expenses related to: ongoing indoor storage at MJA's request, deep cleaning and maintenance of HVAC Equipment, cosmetic maintenance and/or improvements to certain HVAC Equipment at MJA's request, and depreciated value of HVAC Equipment due to MJA's misrepresented intent and refusal to fulfil the Agreement.

56.  The amount of BGE's recoverable damages related to each category of loss, including but not limited to those listed herein, shall be determined at the time of trial.

**PRAYER FOR RELIEF**

WHEREFORE, Battle Green Equipment LLC respectfully requests that this Court:

1. Enter judgment for the Defendant/Plaintiff-in-Counterclaim on all counts;

2. Award Defendant/Plaintiff-in-Counterclaim damages under all counts;

3. Double and/or treble the amount of damages and award Defendant/Plaintiff-in-Counterclaim its costs, interest, and attorneys' fees incurred in connection with Count III of the Counterclaim; and

4. Award Defendant/Plaintiff-in-Counterclaim all other such relief as the Court deems just and proper.

**~~JURY DEMAND~~**

~~Defendant/Plaintiff-in-Counterclaim demands a trial by jury on all claims so triable.~~

Respectfully Submitted,

BATTLE GREEN EQUIPMENT LLC,

By its attorneys,

/s/ Kenneth A. Sherman
Kenneth A. Sherman, BBO No. 569293
ksherman@princelobel.com
Lauren M. Koslowsky, BBO No. 705541
lkoslowsky@princelobel.com
PRINCE LOBEL TYE, LLP
One International Place, Suite 3700
Boston, MA  02110
t. (617) 456-8000
f. (617) 456-8100

Dated: June 14, 2024~~February 29, 2024~~

## CERTIFICATE OF SERVICE

I, Lauren M. Koslowsky, hereby certify that the foregoing document will be served upon counsel of record through the CM/ECF system for registered participants and by first-class mail to any non-registered participants.

/s/ Lauren M. Koslowsky
Lauren M. Koslowsky